NORTHERN PACIFIC RAILWAY COMPANY

*vs.*

PLEASANT RIVER GRANITE COMPANY, et al.

Washington.   Opinion November 24, 1917.

*General rule as to what persons are liable for freight charges.   Railroads.*

On June 12, 1913, the Granite Co. delivered a stone working lathe and equipment at Columbia, Maine, to the Maine Central Railroad Company, then operating the Washington County Railway, to be shipped over its line and connecting lines to William Smith as consignee at St. Cloud, Minnesota.   A bill of lading in standard form was issued for the shipment, signed by the defendant and by the agent of the initial carrier, naming the consignee, the destination of the shipment and describing the property shipped.   The lathe and equipment were transported in accordance with the terms of the bill of lading to their destination at St. Cloud and the consignee was notified of their arrival, but refused to receive them.   They remained on the car at St. Cloud for 86 days and then the car was sent to the Minnesota Transfer, some distance from St. Cloud, where the lathe and equipment were placed in charge of a warehouse company for storage.   The plaintiff is the last of the connecting carriers and brings this action to recover the sums it has paid as the freight charges of the preceding carriers, and its own freight charges, and the demurrage and storage charges. The goods were shipped on a flat car.   Their weight did not exceed 17,100 pounds.   24,000 pounds is the admitted minimum weight of a carload of

machinery as fixed by the Interstate Commerce Commission. The freight charges of each carrier were based on the rates established by said Commission, and were computed on 24,000 pounds weight. The rate charged for demurrage is the rate established by the Commission.

*Held:*

1. No cause of action is proved against the defendant Arthur J. Dalot, and he is entitled to judgment in his favor and for his costs.

2 The carrier's contract and right to recover compensation for his services arise from the circumstances of his employment. He has the right to look for his compensation to the party who required him to perform the service. And his right to receive his freight from the shipper or consignor cannot be made to depend upon what may prove to be the legal effect of the negotiations between consignor and consignee upon the title to the property which is the subject of transportation.

3. The statement printed on the back of the bill of lading that the "owner or consignee shall pay the freight and all other lawful charges accruing on said property and, if required, shall pay the same before delivery," in no way relieves the consignor or shipper of his liability to pay the freight if the carrier sees fit to look to him for his compensation. The contract of the consignor and that of the consignee are not considered to be inconsistent with each other.

4. The last of the connecting carriers over whose lines a through shipment of goods is made may pay the preceding carriers their lawful freight charges against the goods and recover the same, together with its own freight and other lawful charges incident to the shipment, of the party liable for the freight.

5. The lathe and equipment covered practically the whole of the flat car, and constituted a carload of machinery as that term is understood in the transportation of such freight, and we conclude that the carriers were entitled to compute their freight on the basis of the minimum weight of a carload of such merchandise.

6. The plaintiff had the right to keep possession of the shipment until its lawful charges should be paid. But in keeping possession of it after its arrival at its place of destination the plaintiff was required to act with reasonable prudence and discretion. It could not incur unnecessary and unreasonable expenses in keeping possession of the property and hold the defendant liable therefor.

7. The court is of opinion that it was imprudent, unreasonable and unnecessary for the plaintiff, under the facts disclosed, to keep the goods on the car at St. Cloud at a demurrage charge of one dollar per day for 86 days, and that it should have unloaded the shipment and released the car at least two months sooner than it did, thus reducing the demurrage charge to $26.

Action of assumpsit to recover for freight charges, demurrage and storage on certain machinery carried by rail from Columbia, Maine, to St. Cloud, Minn. Defendants filed plea of general issue. At close of testimony, with consent of parties, case was reported to Law Court

for determination of the rights of the parties, upon so much of the evidence as legally admissible.   Judgment in accordance with opinion.

Case stated in opinion.

*C. B. & E. C. Donworth*, for plaintiff.

*H. H. Gray*, for defendants.

SITTING: CORNISH, C. J., SPEAR, KING, BIRD, HANSON, MADIGAN, JJ.

KING, J.   This case comes up on report.   It is an action to recover for freight, demurrage and storage on a certain stone working. lathe and equipment shipped from Columbia, Washington County, Maine, to one William Smith at St. Cloud, Minnesota.

It may be stated at the outset that no cause of action is proved against the defendant, Arthur J. Dalot, and the word defendant as herein used refers only to the Pleasant River Granite Company.

On June 12, 1913, the defendant delivered the lathe and equipment at Columbia to the Maine Central Railroad Company, then operating the Washington County Railway, to be shipped over its line and connecting lines to William Smith as consignee at St. Cloud, Minnesota. A bill of lading in standard form was issued for the shipment, signed by the defendant and by the agent of the initial carrier, naming the consignee, the destination of the shipment, and describing the property shipped.   The lathe and equipment were transported in accordance with the terms of the bill of lading to their destination at St. Cloud and the consignee was notified of their arrival, but he refused to receive them, not, however, on account of any default or neglect of duty on the part of any of the carriers over whose lines the shipment was made.   The plaintiff is the last of the connecting carriers and brings this action to recover such sums as it has paid as the freight charges of the preceding carriers, and for its own freight charges, and for demurrage and storage charges.

1.   As to the defendant's liability.   It claims that it is not liable at all because it was not the owner of the property at the time of the shipment, the title thereto, as it claims, being then in said William Smith by virtue of a sale of the lathe and equipment from the Granite Company to him.   Considerable evidence was presented, on the one side and the other, bearing on that issue of title.   But we do not deem it necessary to determine that issue.

We can entertain no doubt that the defendant, the shipper of the property, is liable to pay the freight and all other lawful charges accruing against the property incident to its shipment. The carrier's contract and right to recover compensation for his services arise from the circumstances of his employment. He has the right to look for his compensation to the party who required him to perform the service. And such is the well settled doctrine.

In *Holt* v. *Wescott*, 43 Maine, 445, 451, the court said: "Without further citations, we think the general rule deducible from them to be, that in all cases where goods are shipped by a consignor under a contract, or for his benefit, he is originally liable for freight, and that the insertion in a bill of lading of a provision that the goods are to be delivered to the consignee, &c., 'he or they paying freight', will not, of itself, relieve him from that liability; that provision being designed for the benefit of the carrier, he may waive it if he choose so to do, and resort to his employer, the consignor, for his freight, unless there is some special stipulation by which that employer is to be exonerated." To the same effect the court of Massachusetts held, in *Wooster* v. *Tarr*, 8 Allen, 270, saying: "The shipper or consignor, whether the owner of the goods shipped or not, is the party with whom the owner or master enters into the contract of affreightment. It is he that makes the bailment of the goods to be carried, and as the bailor, he is liable for the compensation to be paid therefor." Again, in *Finn* v. *Railroad Corporation*, 112 Mass., 524, the court said: "We do not think the carrier's contract and right to receive his freight can be made to depend upon what may prove to be the legal effect of the negotiations between consignor and consignee upon the title to the property which is the subject of transportation." See also 4 R. C. L., page 857; 4 Elliott on Railroads, Sec. 1569; 2 Moore on Carriers (2d Ed.) pages 669, 670; 6 Cyc., page 500.

The defendant delivered the lathe and equipment to the initial carrier, requested that the shipment be made, and signed the bill of lading. And it does not appear that the carrier had any information concerning any negotiations between the consignor and consignee as to a sale of the property from the former to the latter. But the defendant urges in support of its contention the fact that there is printed on the back of the bill of lading a provision that the "owner or consignee shall pay the freight and all other lawful charges accru-

ing on said property, and, if required, shall pay the same before delivery." We think that provision in no way relieves the consignor or shipper of his liability to pay the freight if the carrier sees fit to look to him for his compensation. That stipulation was plainly designed for the benefit of the carrier, and to make expressly definite his rights against the consignee; it expressly makes the consignee liable for the freight, and asserts the carrier's right to have payment for his services before delivery of the goods transported, but it does not relieve the shipper or consignor from his contract to pay the freight. The contract of the consignor and that of the consignee are not considered to be inconsistent with each other.

We are therefore of opinion that the defendant, the shipper and consignor of the goods shipped, is liable to pay the freight and all other lawful charges accrued against the goods shipped as incident to the shipment.

And it is too well settled to require the citation of authorities, that the last of the connecting carriers, over whose lines a through shipment of goods is made, may pay the preceding carriers their lawful freight charges against the goods and recover the same, together with its own freight and other lawful charges incident to the shipment, of the party liable for the freight.

2. But the defendant contends that the claims set forth in the plaintiff's writ are excessive. They are (1) the freight charges of the several carriers, including the plaintiff, amounting to $194.40; (2) demurrage at St. Cloud for 86 days at $1.00 per day; and (3) $5.50 paid for unloading the goods, and $174.00 paid a warehouse company for storing them.

It is admitted that the freight charges of each carrier are based on the rates established by the Interstate Commerce Commission; and they are computed on a weight of 24,000 pounds, which is the minimum of a carload of machinery as fixed by the Commission. But the net weight of the goods shipped did not exceed 17,100 pounds, and the defendant claims that the freight charges should be computed on that · weight. This raises the question of fact whether the goods shipped fairly and reasonably amounted to a carload. They were transported on a flat car. It would be unprofitable to incorporate here a detailed description of the lathe and its equipment as disclosed in the record. Its most bulky part consisted largely of hard pine timber, a few sticks being 14 inches square and not less than 28 feet long, and there were

two constructed hard pine frames each 6 feet square and 5 feet high, and much other timber, shafting, fittings and appliances. The defendant contends that the goods shipped did not occupy all the space of the car, and that the carrier might have used the balance of the space for other freight. On the other hand, in behalf of the plaintiff, some witnesses were called who testified that they saw the loaded car and that the lathe and equipment covered practically the whole of it, and constituted a carload as that term is understood in the transportation of such freight. Considering all the evidence, and in view of the fact that the shipment was a through transportation of machinery from Maine to Minnesota, and if the whole of the car was not actually occupied by the lathe and its equipment any unoccupied space probably could not have been reasonably utilized for other freight, we conclude that the carriers were entitled to compute their freight on the basis of the minimum weight of a carload of such merchandise.

The rate per day of the demurrage charge is not questioned, but the length of time for which the charge is made is challenged.

Upon the arrival of the car at St. Cloud the plaintiff was immediately informed that the consignee would not receive the goods. It so notified the defendant and asked it for orders as to the disposition of the goods, but received none. August 2, 1915, about 26 days after the car arrived at St. Cloud, the plaintiff wrote the defendant as to the matter, saying in part, "We have been exceedingly lenient in holding the car on the track this length of time, but immediate disposition must be given. . . . Unless you arrange for a payment of these charges, we will have to dispose of the shipment with a view of recovering them, and, if we do not, look to you for the deficit. . . There are no facilities at St. Cloud, Minnesota, for storing this shipment; otherwise would have placed in public storage at your expense and risk in order to release our equipment. Of course it is possible to unload the machinery on the right of way, but I do not believe you would care to have it exposed to the elements in that manner. It has, however, become a very old matter, and your immediate attention is requested."

This letter discloses the situation. The plaintiff had the right to keep possession of the shipment until its lawful charges should be paid. But in keeping possession of the shipment after its arrival at its place of destination the plaintiff was required to act with reason-

able prudence and discretion. It could not incur unnecessary and unreasonable expenses in keeping possession of the property and hold the defendant liable therefor. The property might have been unloaded on the plaintiff's right of way, as it admits, or it could have been taken to a public warehouse, as was in fact done. We do not hold that the plaintiff acted imprudently in taking the property to the warehouse at Minnesota Transfer, although at an additional freight charge of $33.60. But we do hold that it was imprudent, unreasonable and unnecessary for the plaintiff, knowing that it was highly improbable that the defendant would give any orders for the disposition of the shipment, to keep the goods on the car at a demurrage charge of one dollar per day for 86 days, in other words, to make the freight car a place of storage for such merchandise and for such a length of time. And in the opinion of the court the plaintiff should have unloaded the shipment and released the car at least two months sooner than it did, thus reducing the demurrage charge to $26.

An error was made in the writ as to the storage charge, the rate paid being $2 per month instead of $6, and the corrected charge for storage paid is $36.

The court, therefore, finds the amount the plaintiff is entitled to recover of the defendant to be $265.90, made up as follows: the freight charges, including the plaintiff's, amounting in all to $194.40; the demurrage of $26, for 26 days; the $5.50 paid for unloading, and the $36, paid for storage, together also with $4 which would have been the expense of storing the goods for the extra two months they were kept on the car.

Accordingly the entry will be,

> *Judgment for the defendant Arthur J. Dalot and for his costs.*
>
> *Judgment for the plaintiff against the Pleasant River Granite Company for $265.90, with interest from the date of the writ, and costs.*