CHICAGO & NORTHWESTERN RAILWAY COMPANY, APPELLANT,
v. WILLIAM H. QUEENAN ET AL., APPELLEES.

FILED APRIL 12, 1918.  No. 19918.

Carriers: FREIGHT CHARGES: LIABILITY. In a suit brought by a railway company against the consignors, Kinney & Allen, and the consignee, William H. Queenan, it was shown that 36 carloads of hay were shipped by the consignors, Kinney & Allen, from Newport, Nebraska, to South Omaha, f. o. b., the shipment being made under the tariff regulations of the Nebraska railway commission, and it being shown that the hay was delivered to the Union Stock Yards Company at the place of destination on Queenan's order and without collecting the freight charges, and that Queenan had become insolvent. *Held*, that, as shippers, Kinney & Allen were liable for the legal freight charges with Queenan, and that they had not been released.

APPEAL from the district court for Douglas county: WILLIAM A. REDICK, JUDGE. *Reversed with directions.*

*A. A. McLaughlin, Wymer Dressler* and *Lyle Hubbard,* for appellant.

*McGilton, Gaines & Smith, contra.*

HAMER, J.

This action was brought by the Chicago & Northwestern Railway Company to recover the freight charges on 36 carloads of hay shipped by the firm of Kinney & Allen, from Newport, Nebraska, to one William H. Queenan, at South Omaha, in said state. The shipments were made in the ordinary way by Kinney & Allen to Queenan, f. o. b., and were delivered to the consignee on his order. The freight charges were never paid by any one. The action was commenced against Kinney & Allen and Queenan, who is insolvent. Queenan made default, and judgment was rendered against him for $931.94. Kinney & Allen filed an answer, by which they admitted that they were a partnership engaged in buying and shipping hay in large quantities at Newport, Nebraska; that at the time

mentioned in plaintiff's petition they sold the hay in
question to Queenan and delivered the same to the
plaintiff railroad company at Newport for shipment to
him at South Omaha.   They alleged that by their
arrangement with Queenan the freight was to be paid
by him at the place of destination.  The answer further
alleged that the plaintiff company delivered the hay to
the consignee without collecting the freight charges,
whereby it waived all claims against Kinney & Allen
therefor, and that no demand was made upon them
until long after the shipments were delivered to Queenan
and he had become insolvent.  It was also alleged
that the plaintiff company knew that the hay was own-
ed by the consignee.

Plaintiff by its reply denied all of the new matter
contained in the answer, and alleged that Kinney &
Allen were the shippers of the hay over plaintiff's
railroad, and as such shipper became indebted to plain-
tiff for all freight charges on said shipments, regard-
less of the agreements or promises of other parties
respecting the said freight, and that the liability of
defendants Kinney & Allen could only be discharged
by the payment of the same, and that they had never
been paid.  The plaintiff by its reply further alleged
that the hay was sold by Queenan to the Union Stock
Yards Company that agreed to pay plaintiff's freight
charges, but that said company did not pay said charges,
and that plaintiff advised defendants Kinney & Allen
that the stock-yards company had refused to pay the
same; that, by an arrangement made between the de-
fendants and the stock-yards company, the defendants
Kinney & Allen had received the purchase price of the
hay, and no provision had been made for the payment
of plaintiff's freight charges.  Therefore Kinney &
Allen were estopped to deny liability for said charges.
On these issues the case was tried to a jury.  At the
conclusion of the evidence plaintiff requested the court
to direct a verdict in its favor against all the de-
fendants.  This request was refused, and by agree-

ment of the parties the jury were discharged and the cause was submitted to the court. The finding and judgment was for defendants Kinney & Allen, and the plaintiff has appealed.

Appellant contends that the judgment of the district court is contrary to the evidence and is contrary to law. The record discloses that the 36 carloads of hay were shipped by defendants Kinney & Allen, from Newport, Nebraska, to Queenan at South Omaha; that the plaintiff transported the hay over its line of railroad; that when it received the shipments it issued to Kinney & Allen a bill of lading or receipt as follows:

"Chicago & Northwestern R. R. Co.

"Received subject to the classifications and tariffs in effect on the date of issue of this shipping order from Kinney & Allen at Newport, Neb., Oct. 9, 1914, the property described below. * * * Consigned to W. H. Queenan, South Omaha, Nebraska."

On the reverse side of the bill of lading was the following:

"The owner or consignee shall pay the freight and all other lawful charges accruing on said property, and, if required, shall pay the same before delivery. If upon inspection it is ascertained that the articles shipped are not those described in this bill of lading, the freight charges must be paid upon the articles actually shipped."

There is also contained in the record the tariff regulation provided by the Nebraska railway commission under which Kinney & Allen made the shipments in question, which reads as follows: "Hay prepaid or guaranteed.— Shipments of hay for Omaha or South Omaha must not be received unless charges are prepaid or guaranteed."

There seems to be no dispute as to the amount of the shipments or of the correctness of the freight charges. There was no agreement between the plaintiff company and Kinney & Allen releasing them from legal liability for the payment of the freight charges on said ship-

ments. The record further shows without dispute that the hay in question was delivered to the Union Stock Yards Company at the order of Queenan, and that the freight charges were never paid by any one; that the plaintiff never made proper efforts to collect the freight from the stock-yards company and Queenan, and gave notice of non-payment to Kinney & Allen and of the failure and inability to collect the same from the consignee of said company. The plaintiff therefore insists that the consignors are liable for the freight charges, and that it is entitled to a judgment against Kinney & Allen therefor. In support of this contention appellant has cited a great number of authorities, from some of which we quote.

Appellant says: "A shipper of goods by railway under a straight bill of lading is primarily and absolutely liable for the lawful tariff charges, and that liability can only be discharged by payment."

In 2 Hutchinson, Carriers (3d ed.) sec. 810, it is said: "But the remedy against the consignee is not exclusive, although he may be the owner of the goods. It is held not to be obligatory upon the carrier to collect the freight of him, even when the bill of lading contains the usual clause, 'he paying the freight thereon.' Such provision, it has been decided, is intended for the exclusive benefit or accommodation of the freighter or shipper of the goods, and imposes no duty upon the carrier to collect the freight of the consignee; but he may even waive his lien upon the goods by delivering them to the consignee, without requiring payment of the freight, and still hold the shipper or consignor liable upon the contract of shipment. So far as the carrier is concerned, the consignee will be considered as merely the agent of the shipper to pay the freight, and if he fails to pay it the party who has reposed the confidence must take the consequences of the breach of duty. It will alter none of the rights of the carrier, to whom the shipper became bound for the freight as soon as the goods were delivered for carriage." See,

also, 6 Cyc. 500; *Central R. Co. v. MacCartney*, 68 N. J. Law, 165; *Central of Georgia R. Co. v. Birmingham Sand & Brick Co.*, 9 Ala. App. 419; *Baltimore & O. S. W. R. Co. v. New Albany Box & Basket Co.*, 48 Ind. App. 647.

In *Cincinnati, N. O. & T. P. R. Co. v. Vredenburgh Sawmill Co.*, 13 Ala. App. 442, it was said: "The appellee was neither the owner nor the consignee of the shipment, but was the shipper or consignor, and, while the bill of lading contained no express stipulation on the part of the consignor to pay the freight there was an implied contract that it would, as the shipper who had on its own account engaged the services of the plaintiff as a carrier, pay the legally established transportation charges if the consignee should refuse to accept the shipment and pay the lawful charges. 6 Cyc. 500, sec. 5, and authorities cited in note 1. Otherwise there would be no way in those cases where the consignee rightfully refuses to accept the shipment and is not responsible for the charges of carriage to enforce the statutes requiring common carriers under stipulated penalty in case of failure to exact and collect lawful published and established rates and charges."

In *Jelks v. Philadelphia & R. R. Co.*, 14 Ga. App. 96, the court said: "Since the law imposes upon a carrier the absolute duty to collect freight charges, it may proceed against either the consignee or the consignor; and, to relieve itself from the penalty imposed by law for failure to exact the charges, if it fails to collect them from the consignee it must proceed against the consignor. This is required as a matter of public policy. It is not only the right, but the duty, of the carrier to thus collect the charges."

The foregoing language is especially applicable to the case at bar, in view of the Nebraska statutes on the subject.

Section 6147, Rev. St., 1913, provides: "If any railway company or common carrier subject to the provisions of this article, directly or indirectly, through or

by its agents, officers or employees, by any special rate, rebate, drawback or other device, shall charge, demand, collect or receive from any person, firm or corporation a greater or less compensation for any service rendered or to be rendered by it than it charges, demands, collects or receives from any other person, firm or corporation for doing a like and contemporaneous service, the same shall constitute an unjust discrimination, which is hereby forbidden and declared to be unlawful.''

Section 6148 provides: ''If any railway company or common carrier subject to the provisions of this article, through or by its officers, agents or employees, makes or gives any undue or unreasonable preference or advantage to any particular person, company, firm or corporation or locality, or subjects any particular description of traffic to any undue or unreasonable prejudice, delay or disadvantage in any respect whatsoever, the same shall constitute an unjust discrimination, which is hereby prohibited.''

Section 6151 provides a fine of not less than $500 nor more than $5,000 for violation; and section 6152 provides fine and imprisonment for individuals violating the foregoing sections.

Section 6153 provides: ''Any officer, agent or employee of any railway company or common carrier subject to the provisions of this article, who, by means of false billing, false classification, false weight, or by any other device, shall suffer or permit any person or persons to obtain transportation for property at less than the regular rates then in force on the line of such railway company or common carrier, or any part thereof, or who, by means of false billing, false classification, false weighing, or by any device whatsoever, shall charge any person, firm or corporation for the transporation of property other than the rates fixed and established, upon the line of said railway company or common carrier, shall be guilty of a misdemeanor, and on conviction thereof shall be fined in a sum not less than

$100 nor more than $5,000 or be imprisoned in the county jail in the county wherein conviction was had, not less than ten days nor more than thirty days or both, within the discretion of the court.''

The defendants Kinney & Allen claim exemption from the general liability, because they contend that they made their shipments under a private agreement between themselves and Queenan on the basis of f. o. b. Newport. It is admitted, however, that the shipments were made pursuant to tariffs established in the manner required by law. They do not claim to have had any contract or agreement with the plaintiff absolving them from liability for the freight charges. In support of the contention that Kinney & Allen are not liable for these charges, there is cited *Barker v. Havens,* 17 Johns. (N. Y.) 234; *McEwen v. Jeffersonville, M. & I. R. Co.,* 33 Ind. 368; *Chicago, R. I. & G. R. Co. v. Floyd,* 161 S. W. (*Tex. Civ. App.*) 954. A careful examination of these authorities does not seem to justify the contention made by counsel for the defendants.

It would seem that the provision in the bill of lading, ''consignee or owner paying freight,'' is for the benefit of the carrier, and does not relieve the shipper from his primary and absolute liability for the lawful charges. *Coal & Coke R. Co. v. Buckhannon River Coal & Coke Co.* 77 W. Va. 309.

In the above case it was held: ''A consignor, who signs a bill of lading on his own account, and not as agent for the consignee, is liable to the carrier for the freight, although title to the goods passed to the consignee on delivery to the carrier. * * * In the absence of a special contract, both consignor and consignee, who has accepted the goods, are liable to the carrier.'' In the body of the opinion it is said: '''Delivery of the coal to the consignee, although a waiver of its lien for the freight by the carrier, did not exempt the consignor from liability for the freight.''

A shipper is conclusively presumed to know the contents of lawfully established tariffs applicable to his

shipments, and, when such tariffs require that the freight charges be prepaid or guaranteed, the act of shipping *ipso facto* imposes on the shipper absolute liability for the payment of lawful charges. *Kansas City S. R. Co. v. Carl*, 227 U. S. 639. To relieve Kinney & Allen from the payment of the freight charges in this case would amount to a rebate, and would be a discrimination in their favor, which the law does not tolerate.

The judgment of the district court is reversed, and the cause is remanded, with directions to enter a judgment for plaintiff, and against all the defendants, in accordance with this opinion.

REVERSED.

SEDGWICK, J., not sitting.