(No. 12456.—Judgment affirmed.)

The New York Central Railroad Company, Appellee, *vs.* The Philadelphia and Reading Coal and Iron Company, Appellant.

*Opinion filed December 18, 1918—Rehearing denied Feb. 7, 1919.*

Railroads—*carrier of inter-State shipment cannot estop itself to collect freight charges.* The fact that the carrier of an inter-State shipment delivers a car-load of coal to the consignee without collecting the freight charges, and is thereafter unable to collect the same from such consignee owing to the latter's becoming insolvent before judgment was recovered against it, does not estop the carrier from recovering such freight charges from the consignor; nor is such recovery to be defeated because no notice of the consignee's default was given the consignor until over two years had elapsed.

Appeal from the First Branch Appellate Court for the First District;—heard in that court on appeal from the Municipal Court of Chicago; the Hon. William N. Gemmill, Judge, presiding.

Frank Crozier, for appellant.

E. T. Glennon, Robert J. Cary, and Bertrand Walker, (F. W. Flott, of counsel,) for appellee.

Mr. Justice Carter delivered the opinion of the court:

This was an action brought by appellee in the municipal court of Chicago to recover freight charges on a car-load of coal shipped by appellant from Pennsylvania to Chicago. Appellee recovered a judgment for the freight bill, amounting to $109.90. On appeal to the Appellate Court the judg-

ment of the trial court was affirmed, the Appellate Court certifying the case to this court on the ground that an important law question was involved, and this appeal followed.

The coal was delivered in Pennsylvania to a carrier on February 14, 1912, by said coal company, consigned to itself at Chicago. At Buffalo the coal was delivered to appellee, which transported it to Chicago, where it arrived February 19, 1912. On February 20, 1912, appellant by an order in writing directed that the car of coal be forwarded to A. F. Cook & Co., who had purchased the same and agreed to pay the freight thereon, at Pullman, Illinois, *via* the Illinois Central railroad, the order stating, "Charges follow." The coal was delivered to Cook & Co. about March 6, 1912, and appellee at the time demanded the payment of the freight charges, but the same were not paid. It appears that several demands were made later for the same but without avail, and on September 19, 1912, appellee brought suit against Cook & Co. in the municipal court of Chicago and recovered judgment for the amount of the freight on December 13, 1912, which judgment still remains unsatisfied. On September 22, 1914, appellant was first notified by appellee that the freight charges had not been paid. On the last mentioned date Cook & Co. became and have ever since been insolvent and have ceased to do business. It appears from the evidence that Cook & Co., at the time the coal was delivered to them, had sufficient assets to pay the freight charges.

The evidence in the record tends to show that shippers and merchants throughout the country ship great quantities of coal and other commodities to various persons throughout the United States over the lines of the railroad companies, and that the almost universal practice and custom in such shipments is for the shippers not to prepay the freight charges thereon and for the railroad companies to waive their right to such prepayment and to accept payment thereof from the consignees.

Counsel for appellant argues that by its action in extending credit to Cook & Co. and its neglect in not informing appellant that the freight bill had not been paid, so that appellant, until after 'Cook & Co. became insolvent, thought that said company had paid the freight, appellee waived all right to collect said bill from appellant, and is estopped under settled rules of law, on the facts as they appear in this record, from recovering said bill from appellant. Under all the authorities appellant was primarily liable for the lawful transportation charges, and the weight of authority is to the effect that such liability can only be released by payment. *Baltimore and Ohio Southwestern Railway Co.* v. *New Albany Box and Basket Co.* 48 Ind. App. 647; *Holt* v. *Westcott,* 43 Me. 445; *Southern Railway Co.* v. *Southern Cotton Oil Co.* 91 S. E. Rep. 876; *Central Railway of New Jersey* v. *MacCartney,* 68 N. J. L. 165; *Atchison, Topeka and Santa Fe Railway Co.* v. *Stannard Co.* 99 Kan. 720.

The Federal act of 1887 to regulate commerce controls in this and similar transactions. Appellee had no right to release appellant from liability to pay the freight, and had it attempted to do so such action would have been unlawful. "The necessary effect of all these decisions construing and applying the Inter-State Commerce act, when considered together, is, * * * that the carrier cannot by any act estop itself from exacting the lawful freight rate. If the carrier could so estop himself, then it would lie within the carrier's power, by purposely putting itself in a position where it could not exact the lawful rate of a shipper it desired to favor, to render nugatory one of the main designs of the act,—the prevention of discrimination between shippers; and for the law to countenance the doctrine of estoppel in cases like this, is for the law to say, through the courts, that the carrier is estopped from doing what the statute mentioned plainly requires that it must do,—collect the lawful rate in all cases, and nothing greater and nothing less by any means or device whatsoever." *Central of Georgia Rail-*

*way Co.* v. *Birmingham Co.* 9 Ala. App. 419. See, also, to the same effect, *Baltimore and Ohio Southwestern Railway Co.* v. *New Albany Box and Basket Co. supra; Bush* v. *Keystone Driller Co.* 199 S. W. Rep. 597.

Counsel for appellant makes the further suggestion that appellee's claim for recovery of these freight charges should be defeated because of *laches* in the delay of two and a half years before attempting to recover for the same. Under the holding of the court in *Baltimore and Ohio Southwestern Railway Co.* v. *New Albany Box and Basket Co. supra,* (an action of a similar character,) no question of *laches* could arise, the suit being one at law.

Counsel for appellant also argues with great earnestness that the Federal law as to inter-State commerce shipments should be so construed as to hold that in every contract of shipment it is implied that where payment of freight is not made by the consignee before delivery, notice of such fact must be given to the consignor in order to hold him liable in the event of the consignee's insolvency. No authorities are cited to uphold this argument. The act to regulate inter-State commerce does not so provide. To so construe it would be contrary to the uniform holdings of the courts on this question. The wisdom of inserting such a provision in the act regulating inter-State commerce should be addressed to the legislative branch of the Federal government and not to the courts.

The authorities mainly relied on by counsel for appellant to hold that the doctrine of estoppel ought to apply as against appellee, such as *Central Railway of New Jersey* v. *MacCartney, supra,* and *Thomas* v. *Snyder,* 39 Pa. St. 317, are decisions that refer in no way to the Federal act regulating inter-State commerce and therefore can have no bearing on the question here under consideration.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*