Argued April 5, reversed December 4, 1928.

## SOUTHERN PACIFIC COMPANY *v.* OREGON GROWERS CO-OPERATIVE ASSOCIATION ET AL.

(272 Pac. 281.)

For appellant there was a brief over the name of *Mr. Ben C. Dey,* with an oral argument by *Mr. G. L. Buland.*

For respondents there was a brief over the name of *Mr. John F. Reilly,* with an oral argument by *Mr. James G. Wilson.*

RAND, C. J.—The Southern Pacific Company brought two actions to recover transportation charges claimed to be due from the Oregon Growers Co-operative Association. In one the United States Fidelity and Guaranty Company was joined as defendant be-

cause of an undertaking it had entered into guaranteeing payment of the charges. In the other the Association was the sole defendant. The two actions were consolidated by stipulation of the parties and tried by a jury. The trial court gave judgment of nonsuit as to the surety company and entered judgment upon the verdicts against plaintiff in both actions. From these judgments plaintiff appealed and, by a stipulation filed here, the separate appeals have also been consolidated.

There are numerous assignments of error but, under our view of the law, the correctness of the trial court's rulings in sustaining the motion for nonsuit and in refusing to direct a verdict for plaintiff in both actions are the only questions necessary for decision.

In the first of said actions plaintiff sought to recover $5,611.77, the transportation charges upon six carloads of pears shipped by the Association in September and October, 1920, from Medford, Oregon, to Havana, Cuba. In the second action, plaintiff sought to recover $1,603.46, the transportation charges upon two carloads of pears shipped by the Association between the same points in August, 1920. In each case the amount sought to be recovered was the aggregate of the charges for freight, refrigeration and war taxes upon the shipments from Medford to Key West plus the ocean rate from that point to Havana. The transportation to Key West was interstate and from that point to Havana was foreign commerce. The freight charges for the interstate carriage were those stated in the tariffs filed with the Interstate Commerce Commission and the charges for refrigeration were also fixed by order

of the Interstate Commerce Commission. The transportation from Key West to Havana was made on vessels operated by the Florida East Coast Car Ferry Company and the rates therefor were not subject to the control of the Interstate Commerce Commission. They were, however, the regular, established rates for such service. There can, therefore, be no dispute as to the amounts due if defendants are liable therefor.

Most of the facts were agreed. The pears were delivered for shipment by the Association to plaintiff as the initial carrier and were shipped at its request. None of the charges were prepaid or have since been collected. A separate bill of lading was issued upon each shipment and each bill of lading was signed "Oregon Growers Cooperative Assn., Shipper, Per C. C. Lemmon," and also by an agent of plaintiff, and in each thereof the Association was named as both consignor and consignee. It is agreed that the form used was what was known as "Uniform Bill of Lading—Standard form of straight bill of lading approved by the Interstate Commerce Commission by Order No. 787 of June 27, 1908. Southern Pacific Company Straight Bill of Lading—original— non-negotiable." But an agreed copy of such bills of lading was made a part of the stipulation of facts and this copy shows that each of the bills of lading contained a direction to "deliver on shipper's written order only," followed by a further direction to "advise Alvarino & Alfonso." They each acknowledge receipt of the pears from the Association and stated that the pears were "consigned to the Oregon Growers Cooperative Association, Advise Alvarino & Alfonso. Destination—Havana, State of Cuba," and contained a clause which provided that "the

owner or consignee shall pay the freight and all other lawful charges accruing on said property, and, if required, shall pay the same before delivery." They also contained the following clauses: "If charges are to be prepaid, write or stamp here. 'To be Prepaid.' ———— Received $———— to apply in prepayment of the charges on the property described hereon. ————, Agent or Cashier. Per ———— (The signature here acknowledges only the amount prepaid.) Charges Advanced: $————." None of these blanks above referred to were filled in by writing or otherwise.

It appears from the evidence of one of the officers of the Association, who testified as a witness for defendants, that these bills of lading were first prepared and signed by an agent of the Association and were then delivered to and signed by an agent of plaintiff. Hence, there can be no contention that the bills of lading contained any recital which was not understood and agreed to by the Association.

It is stipulated:

"That prior to the delivery of said shipments to the plaintiff for transportation the defendant Association sold, and Alvarino & Alfonso, of Havana, Cuba, bought, among others, said eight carloads of pears, to be paid for f.o.b. Medford, and said cars were loaded and shipped by said defendant Association in fulfillment of said sale."

and that prior thereto Alvarino & Alfonso had established credit with the Equitable Trust Company of New York for the payment of the pears when delivered to the carrier for shipment and that, upon the loading of the cars and the issuance of the bills of lading, the Association drew drafts in favor of the United States National Bank of Salem, Oregon, for

the purchase price of the pears and attached thereto a receipted invoice together with a copy of the bill of lading covering such shipments, and that, upon presentation thereof to the Equitable Trust Company, the drafts were paid, but such drafts did not include any charge for transportation. It is further stipulated that pursuant to the instructions of Alvarino & Alfonso, the Association also forwarded the original bills of lading upon each shipment, together with a receipted invoice for the purchase price of the pears, to Kirtland & Gaither at Key West, who were the forwarding agents of Alvarino & Alfonso, and that upon arrival of the pears at Key West, Kirtland & Gaither, as such forwarding agents "presented to the agent of the Florida East Coast Railway Company the original bills of lading and receipted invoices showing that said pears had been sold to Alvarino & Alfonso, and demanded export bills of lading therefor from Key West, Florida, to Havana, Cuba, but the said agent of said Florida East Coast Railway Company refused to issue said exchange export bills of lading or to deliver said shipments without an order from said defendant Association so to do; that thereupon said Kirtland & Gaither wired said defendant Association as follows:

" 'Key West Florida 6:10 p. m. Oct. 5, 1920.
" 'Oregon Growers Coop. Assn.,
" 'Salem, Org.

" 'Your letter September twenty fifth file forty seven transmitting documents Pennsylvania ten twelve two one. Railroad agent here refuse exchange ocean lading without delivery order from you in favor Alvarino and Alfonso. Wire quick release shipment, documents covering future cars should be accompanied with delivery orders favor ultimate

consignee when your interests in shipment protected prompt handling necessary effect clearance.

" 'KIRTLAND and GAITHER.'

"That thereupon the defendant Association telegraphed the agent of the Florida East Coast Railway Company as follows:

" 'October 6, 1920.

" 'Agent Florida East Coast Railway Co.,

" 'Key West, Florida.

" 'Deliver to Kirtland and Gaither Agents for Alvarino and Alfonso Company, Havana, Cuba, following cars consigned ourselves notify Alvarino quick Pacific fifty two seventy six Pacific thirteen six seventy two Pennsylvania ten twelve twenty one and Lehigh Valley thirty six two eighteen.

" 'OREGON GROWERS COOPERATIVE ASSN.' "

These two telegrams referred to four of the carloads of pears mentioned and described in the first cause of action and, as to the other two carloads referred to therein, it is agreed that on October 9, 1920, the Association sent two telegrams to the local freight agent of the Florida East Coast Railway Company, directing it:

"Upon payment of all charges and surrender of this written order please deliver Car (described by number) contents Comice pears to Kirtland and Gaither, Key West, Florida, without surrender of original bill of lading.

"OREGON GROWERS COOPERATIVE ASSN.

"By J. H. FRAZIER."

That after said telegrams had been forwarded and received, Kirtland & Gaither surrendered the original bills of lading upon the six cars to the Florida East Coast Railway Company and that company issued and delivered to them export bills of lading

"showing the same shipper and consignee in each case as was shown on the domestic bills of lading issued for said cars at Medford, Oregon, and said shipments were further transported by the boats of the Florida East Coast Car Ferry Company from Key West, Florida, to Havana, Cuba, and were delivered to Alvarino & Alfonso."

As to the two cars mentioned in plaintiff's second cause of action, the statement of facts recites that upon their arrival at Key West export bills of lading were issued and that the cars were transported to Havana and there delivered to Alvarino & Alfonso, after the following telegrams had been sent and received:

"Oregon Growers Cooperative Assn.
    "Salem, Oregon.
    "Order quick railroad to deliver to our forwarding agents in Key West Messrs. Kirtland and Gaither the two cars pears shipped us as you billed order. Notify therefore you have already collected your money and bill lading showing order notify causes trouble to forward these cars on the ferry. Prompt action is necessary.

"RATFOS."
"August 31, 1920.

"Local Freight Agent,
    "Florida East Coast Railroad Co.
        "Key West, Florida.
    "Pacific eighty nine ninety three and Pacific thirteen nine sixty six out Medford, Oregon, August fifteenth and seventeenth respectively consigned ourselves advise Alvarino and Alfonso Company, Havana, Cuba, original bills lading in hands of Kirtland and Gaither. Advise quick why delay to car ferry.
        "OREGON GROWERS COOPERATIVE ASSN."

"Ralfos,
    "Havana, Cuba.
    "Original bills lading mailed your forwarding agents Key West, Florida. Do not understand why

delay. We wiring Florida East Coast Railroad also your forwarding agents.

"OREGON GROWERS COOPERATIVE ASSN."

"Kirtland & Gaither,

"Key West, Florida.

"Mailed you August sixteenth and eighteenth original bills lading cars Pacific eighty nine ninety three and Pacific thirteen nine sixty six. Just received advice Alvarino, Havana, Cuba, cars held up. What is the matter. Advise quick.

"OREGON GROWERS COOPERATIVE ASSN."

It was agreed that at the time these shipments were made the tariffs of plaintiff provided that on shipments of fresh fruit "all charges must be prepaid or guaranteed"; that on July 24, 1920, before any of the shipments in question were made, arrangements were made for shipment on the Florida East Coast Car Ferry Company's boats, which company wrote Alvarino & Alfonso, explaining the method of obtaining bookings for shipments on its vessels and requesting them to furnish two copies of their letter to the shippers, one of which should be surrendered to the initial railroad agent as authority for accepting shipment and collecting the prepay, and stating that all shipments to Cuba must be fully prepaid from point of origin to destination. It was agreed that the Florida East Coast Car Ferry Company was engaged exclusively in foreign commerce and operated a steamship line between Key West and Havana and "had in effect rules, regulations and tariff requiring prepayment of freight charges on freight moving to Havana, Cuba," and stating that it would decline to receive shipments from connections unless that condition was complied with. It was also agreed that the bills of lading issued at Medford, covering the shipments involved

here, were not on export bill of lading forms and that it was contemplated that said bills of lading would be exchanged for export bills of lading at some point in the United States before the shipments left the United States. It was also agreed that upon arrival of the shipments at Key West the Florida East Coast Railway Company, without any notice to or authority from the defendant Association, other than that set forth in the stipulation itself, and without any demand for said freight charges, made a notation upon the waybills accompanying said shipments that the transportation and refrigeration charges were prepaid, and permitted said shipments to be forwarded to Havana and to be there delivered without making any demand for payment. It was also agreed that the value of the shipments at the time of the delivery thereof was in excess of the lawful charges against the same and that no demand for the payment of these charges was made to anyone until April 15, 1921, when the agent of plaintiff addressed a letter to the Association, which referred to the two cars mentioned in plaintiff's second cause of action, and stated that said agent had received a letter from the auditor of the company, "advising that destination carrier has debited this company with $744.46 on each of the above cars account shipments exported to Havana, Cuba, charges must be fully paid," and asking the Association to look up its records and ascertain whether prepayment had been made on those cars. On July 26, 1921, the agent of plaintiff wrote the Oregon Growers Co-operative Association, calling attention to these shipments and stating that they should have been prepaid, but no demand for payment by the Association was made until July 26, 1921, and notice of its refusal to pay

was not given to the defendant surety company until September 22, 1921.

██ It is contended on behalf of the Association that, because of the arrangements that Alvarino & Alfonso had entered into with it for the purchase of the pears, the title passed on delivery to plaintiff for shipment and that, in delivering the pears and in taking bills of lading therefor, the Association was acting merely as the agent of Alvarino & Alfonso and, therefore, is not liable for the unpaid freight charges. It is not even suggested in the record that plaintiff was apprised of these arrangements or that it had any knowledge or notice of any fact which would exonerate the Association from liability. Nothing is better established in law than that an agent may contract as to the property of his principal in a manner which will create a personal liability upon his part. In delivering these pears for shipment, the Association was not acting as agent but was acting as owner and all of the shipments were made at its request and for its benefit. It signed each bill of lading as shipper and named itself therein as both consignor and consignee and when it did so, it was dealing with its own property, for, under the stipulated facts, the title had not passed at the time delivery was made. There was no provision in any bill of lading exempting it from liability. If these shipments had been consigned to Alvarino & Alfonso instead of to the Association itself, presumptively the title would have passed upon delivery to the carrier for shipment but that was not done in respect to any of these shipments. The pears were loaded on board cars and delivered to the carrier as one of the steps consummating their sale to Alvarino & Alfonso, but Alvarino & Alfonso

were not named as consignors or consignees. The arrangement was that bills of lading should be taken and that to each bill of lading a draft should be attached, together with a receipted invoice, and that it should be forwarded to a bank in New York for payment. Under this arrangement and from the manner in which the shipments were made, the title did not pass until the drafts were paid: See *Portland Flouring Mills Co.* v. *British & Foreign Marine Ins. Co.*, 130 Fed. 860. The fact that the drafts were not drawn in the name of the Association but were drawn in the name of a Salem bank and, when drawn, were cashed by such bank does not change the result so far as passing title is concerned, for until the drafts were paid by the drawee bank, it is clear the Salem bank did not intend that that bank should become the owner of the property merely because it had advanced to the Association the amount of the drafts. It was only an accommodation upon the part of the Salem bank and if, for any reason, the New York bank had failed to pay the drafts when presented to it, the Salem bank, so far as this record shows, would merely have charged back against the Association the amount it had advanced in cashing the drafts. And, if the drafts had not been paid upon presentation to the New York bank, it is clear from the stipulated facts and testimony in the case that the title would never have passed to Alvarino & Alfonso. It is, therefore, idle to contend that the title passed upon delivery of the pears for shipment or that the Association was acting as agent for Alvarino & Alfonso.

◼ Defendants also contend that because these shipments were worth more than the amounts of the freight charges and the carriers had a lien thereon

for the full amount thereof, their delivery by the delivering carrier to Alvarino & Alfonso without collection of the charges operated to release the Association from its liability to pay the same. No authority to support this contention has been cited and we can find no case so holding. On the contrary, the established rule is that the lien of the carrier upon the shipment for its charges is a right which is conferred exclusively upon the carrier and is for the carrier's benefit and not for the protection of the shipper and that delivery without collection of such charges does not relieve the shipper in any case where he is liable: *Southern Ry. Co. v. Latham*, 176 N. C. 417 (97 S. E. 234); *Northern Pacific Ry. Co. v. Pleasant River Granite Co.*, 116 Me. 496 (102 Atl. 298); *St. Louis Southwestern Ry. Co. v. Gramling*, 97 Ark. 353 (133 S. W. 1129); *Seaboard Airline Ry. v. Montgomery*, 28 Ga. App. 639 (112 S. E. 652); *Chicago & N. W. Ry. Co. v. Queenan*, 102 Neb. 391, 393 (167 N. W. 410, L. R. A. 1918D, 946); *Missouri Pac. R. Co. v. Pfeiffer Stone Co.*, 166 Ark. 226 (266 S. W. 82); *Southern California Co. v. Alberti*, 58 Cal. App. 84 (207 Pac. 1023); *Montpelier & W. R. R. Co. v. Chas. Bianchi & Son*, 95 Vt. 81 (113 Atl. 534); *Chicago & E. R. Co. v. Lightfoot*, 206 Mo. App. 436 (232 S. W. 176); *Southern Cotton Oil Co. v. Southern Ry. Co.*, 147 Ga. 646 (95 S. E. 251); *Coal & Coke R. Co. v. Buckhannon River Coal & Coke Co.*, 77 W. Va. 309 (87 S. E. 376, L. R. A. 1917A, 663); *Cleveland, C. C. & St. L. Ry. Co. v. Southern Coal & Coke Co.*, 147 Tenn. 433 (248 S. W. 297); *New York Central R. Co. v. Philadelphia & Reading C. & I. Co.*, 286 Ill. 267 (121 N. E. 581); *Boston & M. R. R. Co. v. National Orange Co.*, 232 Mass. 351 (122 N. E. 313).

■ The Association also contends that it would work an injustice to permit the plaintiff to recover these unpaid freight charges because of the failure of the Florida East Coast Railway Company to carry out the directions contained in the two telegrams to its local freight agent at Key West, in which the Association said:

"Upon payment of all charges and surrender of this written order please deliver * * without surrender of original bill of lading."

This contention raises a question which like other questions involved here are federal questions and we are bound by the rulings of the federal courts thereon. In *Louisville & Nashville R. R. Co.* v. *Central Iron & Coal Co.*, 265 U. S. 59 (68 L. Ed. 900, 44 Sup. Ct. Rep. 441), the court said:

" * * Nor could any act or omission of the carrier (except the running of the statute of limitations) estop or preclude it from enforcing payment of the full amount by a person liable therefor."

■ Under this decision, the Association, as we shall show, being liable for the freight charges at the time when the delivering carrier waived its lien by surrender of the shipments to Alvarino & Alfonso without collection of its charges and when it failed to carry out the directions contained in the two telegrams to surrender the two shipments referred to "upon payment of all charges," such acts or omissions do not estop or preclude plaintiff from enforcing payment of its charges by the Association.

The general rule is that the consignor with whom the contract of shipment is made is primarily liable for freight charges whether he is the owner of the goods or not: *Portland Flouring Mills Co.* v. *British*

& Foreign Marine Ins. Co., 130 Fed. 860; Cincinnati, N. O. & T. P. Ry. Co. v. Vredenburgh Saw Mill Co., 13 Ala. App. 442 (69 South. 228); Montpelier & Wells River R. R. Co. v. Bianchi & Sons, 95 Vt. 81 (113 Atl. 534); 10 C. J., p. 445, and cases cited. The reason for the rule is that the consignor or shipper is the one who makes the bailment of the goods carried and, as the bailor, is liable for the carrying charges: Wooster v. Tarr, 8 Allen (Mass.), 270 (85 Am. Dec. 707); Blanchard v. Page, 8 Gray (Mass.), 281; Portland Flouring Mills Co. v. British & Foreign Marine Ins. Co., supra. In Louisville & Nashville R. R. Co. v. Central Iron & Coal Co., supra., the court said:

" * * Ordinarily, the person from whom the goods are received for shipment assumes the obligation to pay the freight charges; and his obligation is ordinarily a primary one. This is true even where the bill of lading contains, as here, a provision imposing liability upon the consignee. For the shipper is presumably the consignor; the transportation ordered by him is presumably on his own behalf; and a promise by him to pay therefor is inferred (that is, implied in fact), as a promise to pay for goods is implied, when one orders them from a dealer. But this inference may be rebutted, as in the case of other contracts. It may be shown, by the bill of lading or otherwise, that the shipper of the goods was not acting on his own behalf; that this fact was known by the carrier; that the parties intended not only that the consignee should assume an obligation to pay the freight charges, but that the shipper should not assume any liability whatsoever therefor; or that he should assume only a secondary liability. * * No contract of the carrier could * * release from liability a shipper who had assumed an obligation to pay the charges. Nor could any act or omission of the carrier (except the running of the statute

of limitations) estop or preclude it from enforcing payment of the full amount by a person liable therefor."

Under the agreed facts in this case, however, the goods were not consigned by the Association to someone else but were consigned to itself with directions on the bills of lading to notify Alvarino & Alfonso. The Association not only signed the bills of lading as shipper of the goods but designated itself as both the consignor and consignee of the goods. It, therefore, became obligated to pay the transportation charges without regard to anything else than the promise which the law implies from the delivery of goods for shipment to a railroad carrier by one who is both the consignor and consignee of the goods. The Association also expressly contracted with plaintiff, under the provisions contained in the bills of lading, that the owner or consignee shall pay the freight and all other lawful charges accruing on said property. Hence, whether the owner of the goods or not at the time of their delivery to the carrier, it being the consignee named in the bills of lading, under this provision is expressly contracted to pay the transportation charges thereof.

The bills of lading involved here contained the direction "advise Alvarino & Alfonso," and the further direction "deliver on shipper's written order only." Under these directions it was the duty of the carrier to transport the goods to destination, notify Alvarino & Alfonso, and deliver them only on the written order of the Association. These bills of lading are what are commonly known as "order or notify" bills of lading. The rule as to freight charges in such case is as stated in *New York Cent. R. Co.* v.

*Federal Sugar Refining Co.*, 235 N. Y. 182 (139 N. E. 234, 26 A. L. R. 1312), where the court said:

" * * The railroad company may demand the amount from the consignee, or it may collect from the consignor. It cannot make an election nor be held to an estoppel without violating the purpose and spirit of the Interstate Commerce Commission Act (U. S. Comp. St., § 8653 et seq.). In order to prevent preferences, it is obliged to collect its freight charges, and if it cannot get them from one party it must look to the other. Delivery of the goods without collection is no release or waiver of any or either party. This we held in the Ross Lumber Co. Case, *supra,* and such is the decision in *New York Cent. R. Co.* v. *Philadelphia & Reading Coal & Iron Co.,* 286 Ill. 267 (121 N. E. 581); *Boston & M. R. R. Co.* v. *National Orange Co.,* 232 Mass. 351 (122 N. E. 313); *Montpelier & Wells River R. R. Co.* v. *Bianchi & Sons,* 95 Vt. 81 (113 Atl. 534); *New York, N. H. & H. R. R. Co.* v. *Tonella,* 79 N. H. 464 (111 Atl. 341); *Great Northern Ry. Co.* v. *Hocking Valley Fire Clay Co.,* 166 Wis. 465 (166 N. E. 41); *Chicago & N. W. Ry. Co.* v. *Queenan,* 102 Neb. 391 (167 N. W. 410, L. R. A. 1918D, 946); *Wells Fargo & Co.* v. *Cuneo* (D. C.), 241 Fed. 727."

■ Another reason, and we think it is conclusive upon the question of defendant's liability for the charges upon the six shipments of pears mentioned in the first cause of action, is that the tariffs of plaintiff filed with the Interstate Commerce Commission require that on shipments of fresh fruit "all charges must be prepaid or guaranteed," and that, in compliance with that requirement, the Association executed and delivered to plaintiff the bond of itself and of the United States Fidelity and Guaranty Company, one of the conditions of which was "that if said principal shall upon demand of the Southern Pacific Company, pay or cause to be paid all trans-

portation charges required by tariff to be prepaid or which may accrue on shipments as to which the tariff requires prepayment or guaranty, and shipped by said principal as consignor * * then this obligation shall be void; otherwise to be in full force and effect.'' Having entered into an express undertaking with the surety company as guarantor, guaranteeing the prepayment of these charges, the Association is not in a position to deny its liability therefor.

As sustaining the contention that, under the agreed facts, the defendants are not liable for the transportation charges in this case, they cite *Louisville & Nashville R. R. Co.* v. *Central Iron & Coal Co., supra, Houston & T. C. R. Co.* v. *Lee County Produce Co.,* 14 Fed. (2d) 145, *Yazoo & Miss. Valley R. Co.* v. *Zemurray,* 238 Fed. 789, and *Cincinnati Northern R. R. Co.* v. *Beveridge,* 8 Fed. (2d) 372. The facts in those cases are materially different from those in the case at bar. In the first of the four cases relied on, before delivery to the carrier, the coke had been sold by defendant and the purchasers had resold it and agreed to pay the freight. Upon its arrival at destination a smelter company, which was the ultimate purchaser had by mistake paid a part only of the charges, and the action was brought against the Central Iron Company to recover the balance. In that case the Central Iron Company did not sign the bills of lading, nor was it described therein as the consignor. There was no clause by which it had expressly agreed to pay the freight charges or to guarantee their payment. The goods were not deliverable to its order and the bills of lading indicated that the Central Iron Company was not the owner nor the person in whose behalf the shipment was made.

In the second case cited the facts in many respects are similar to those involved here and dissimilar in others. There the produce company had sold the eggs at prices f.o.b. point of shipment and consigned the shipment to itself and indorsed the bills of lading to the purchaser. In those respects the case was similar to the case at bar. But before making such shipments, an agent of the produce company had made a full disclosure to an agent of the carrier and had asked him for instructions as to the manner in which the shipment should be made. The agent instructed him to follow the custom of consigning the eggs to himself, freight and charges collect, transferring the bills of lading to the purchaser and letting them divert the shipments in accordance with their sales, and he followed the instructions. While en route the purchaser diverted the cars and reconsigned them to various dealers in Havana, Cuba. In making such reconsignments and diversions the railroad company did not notify defendants or ask their consent thereto, and it was held that, under that state of facts, the produce company was not liable.

In the third case relied upon, the defendant Zemurray had sold a carload of bananas to one Pegano, who had deposited the price in the bank subject to draft. The car was not consigned to Zemurray and, therefore, was not deliverable on shipper's order but was consigned to Pegano and, upon arrival at destination, demand for the freight was made and paid by Pegano but by error only a part of the freight charges was collected. In the instant case the goods were not deliverable to Alvarino & Alfonso except upon the written order of the Association. The Association gave the order and here there was

no attempt made to collect the freight charges, nor part payment thereof, and if, as held in that case, the carrier by accepting part payment from Pegano had made an election, there was no such election in this case.

In the last case relied upon by defendants shipment of hay was made under a prepaid bill of lading for which a check had been given by the shipper which was not paid for want of funds. The hay was shipped under an "order or notify" bill of lading and, upon arrival, the notify party had sold the hay and taken up a draft for the purchase price. In exonerating the notify party and his assignee from liability, after pointing out that the shipper had not been shown to be insolvent, the court said:

" * * In addition, however, there was here an express promise to pay, and the railroad company, on the faith of that promise, issued its prepaid bill of lading. As it turned out, it had improvidently extended credit; and while its mistake, inadvertence, or honest agreement are unavailing in discharge of its obligation under the law to collect the full transportation charges, and until delivery of the freight it had a lien for these charges, the obligation thus imposed does not go to the extent of requiring payment by a purchaser of the goods at destination who, relying upon the railroad company's representation of payment, accepts the same, for to do so would be to make a contract for him which he himself had not made."

The questions involved here have all been settled adversely to defendants' contentions in *New York Cent. R. R. Co.* v. *Federal Sugar Refining Co., supra; New York Cent. R. Co.* v. *Philadelphia & Reading Coal & Iron Co.,* 286 Ill. 267 (121 N. E. 581); *Port-*

*land Flouring Mills Co.* v. *British & Foreign Marine Ins. Co., supra.* In all of those cases the facts were substantially identical to those involved here. In each of those cases the goods were deliverable to the shipper's. order and the freight was delivered without the payment of the charges and the shipper of the goods was held liable for the freight charges. In *Coal & Coke Ry. Co.* v. *Buckhannon River Coal & Coke Co.,* 77 W. Va. 309 (87 S. E. 376, L. R. A. 1917A, 663), *Northern Pacific Ry. Co.* v. *Pleasant River Granite Co.,* 116 Me. 496 (102 Atl. 298), and *Montpelier & Wells River R. R.* v. *Bianchi & Sons,* 95 Vt. 81 (113 Pac. 534), the goods were deliverable to a named consignee, but the bill of lading was signed by the shipper in his own name, and the shipper for that reason was held liable. In *Boston & Maine R. R.* v. *National Orange Co.,* 232 Mass. 351 (122 N. E. 313), the goods were deliverable to a named consignee, but he was the agent of the shipper, who was also the owner, and the shipper was held liable.

We have found no case where a shipper, the owner of the goods, signed the bill of lading and was described therein as both consignor and consignee and the shipment was made for his benefit, which holds that the shipper is not liable for the freight charges when sued by the carrier, and we think that none can be found in the books. Under the agreed facts and the testimony, there is no evidence of any fact which can relieve the Association from its liability or upon which the verdict of the jury can be sustained. The plaintiff was entitled to a directed verdict and it was error for the court to refuse to direct a verdict for plaintiff for the amount of freight charges prayed for in both complaints.

■ As already stated, the Association, as principal, and the defendant surety company, as surety, executed and delivered to plaintiff an undertaking which recited that the Association desired to ship certain freight upon which, under tariff provisions, the charges therefor must be prepaid or guaranteed, and contained as one of its conditions that, if the Association should, upon demand of the plaintiff, pay or cause to be paid all transportation charges required by the tariff to be prepaid or guaranteed, other conditions being complied with, the obligation shall be void; otherwise to be in full force and effect. This undertaking guaranteed the payment of the charges upon the six shipments referred to in the first action. The undertaking also provided that "in the event of a default by the principal hereon, in any payment for which the surety shall be liable hereunder, the obligee shall give notice of such default to the surety within ninety (90) days after such default, and shall make claim hereunder as promptly as may be convenient." It is now urged that the notice required was not given within the time limited. It was stipulated that there was no demand made upon the Association for payment of any of these charges until July 26, 1921, and that notice to the surety was given on September 22, 1921, and this was within the time limited by the provisions of the bond, as there could be no default upon the part of the Association until demand was made upon it and it had either refused or failed to pay. It was error, therefore, for the Circuit Court to direct a judgment of nonsuit in favor of the defendant surety company.

■ For these reasons, the judgment of the lower court will be reversed and the cause will be remanded,

with directions to enter a judgment for plaintiff against the Oregon Growers Co-operative Association and the United States Fidelity and Guaranty Company in the sum of $5,448.32 plus the sum of $163.45 war tax, and for the costs and disbursements of the action, and in the second action to enter a judgment in favor of plaintiff and against the Oregon Growers Co-operative Association for the sum of $1,556.76 plus $46.70 war tax, and for the costs and disbursements of that action. There is no prayer for interest in either complaint and, therefore, interest will not be allowed upon either of said sums.

REVERSED.

BEAN, BELT and BROWN, JJ., concur.