IN THE

# SUPREME COURT OF TENNESSEE

FOR THE

EASTERN DIVISION.

KNOXVILLE, SEPTEMBER TERM, 1922.

CLEVELAND C., C. & ST. L. RY. CO. *v.* SOUTHERN COAL & COKE COMPANY.*

(*Knoxville.* September Term, 1922.)

1. CARRIERS. Must collect correct interstate freight notwithstanding error in quoting rate.

Where an erroneous interstate rate is quoted and collected, the carrier must collect the correct freight even though that results in injury or great hardship to the shipper or consumer, and the carrier cannot by its conduct estop itself to sue for and recover the lawful rate. (*Post, pp.* 441, 442.)

---

*On right of carrier to collect interstate freight notwithstanding error in quoting rate see note 38 L. R. A. (N. S.), 354.

On question of liability of consignor for freight see note in L. R. A., 1917A, 665.

On agreement or custom of carrier to notify consignor of consignee's refusal to accept goods or pay freight see note in L. R. A., 1917C, 1127.

(433)

C., C., C. & St. L. Ry. Co. v. So. Coal & Coke Co.

Cases cited and approved: New York Central & Hudson River Railroad Co. v. York & Whitney Co., 256 U. S., 406; Railroad v. Fink, 250 U. S., 577; Louisville & Nashville Railroad v. Maxwell, 237 U. S., 94; Chicago & Alton Railroad v. Kirby, 225 U. S., 155; Texas & Pacific Railway v. Mugg, 202 U. S., 242.

2. **CARRIERS.** Shipper's liability for freight cannot be released by contract.

The shipper's primary liability for payment of interstate freight charges, based on the fact that he contracted for the shipment, cannot be released by express contract with the carrier and agreement to look to the consignee. (*Post, pp.* 442, 443.)

Cases cited and approved: Atlas S. S. Co. v. Columbian Land Co., 102 Fed., 358; Portland Flouring Mills Co. v. British & Foreign Marine Ins. Co., 130 Fed., 860; Jobbitt v. Goundry, 29 Barb. (N. Y.), 509; Central Railroad of N. J. v. MacCartney, 68 N. J. Law 165.

Cases cited and distinguished: Wells Fargo & Co. v. Cuneo (D. C.), 241 Fed., 727; Atchison, Topeka & Santa Fé Railway Co. v. Stannard & Co., 99 Kan., 720.

3. **CARRIERS.** Consignor is primarily liable for freight.

The consignor with whom the contract to ship is made is primarily liable for the freight, and his liability can only be discharged by a full payment either by the consignor or consignee. (*Post, p.* 444.

Cases cited and approved: Wooster v. Tarr, 8 Allen (Mass.), 270; Hayward v. Middleton, 14 S. C. L., 121; Parke v. Austin, 3 Hawaii, 586, 587.

4. **CARRIERS.** Provision for delivery to consignee on payment of freight does not relieve consignor's liability.

A provision in an interstate bill of lading that the goods shipped are to be delivered to the consignee on his paying the freight charges does not relieve the consignor's liability for payment of the charges, if the goods are delivered to the consignee without collecting the charges. (*Post, p.* 444.)

C., C., C. & St. L. Ry. Co. v. So. Coal & Coke Co.

5. **CARRIERS.** Provision owner or consignee shall pay freight does not relieve consignor.

A provision in an interstate bill of lading that the owner or consignee shall pay the freight does not relieve the consignor's liability for the freight, but only recognizes the right of the carrier to hold the shipment until its lien for charges is discharged, and that lien can be waived by the carrier. (*Post, pp.* 445-448.)

Cases cited and approved: Miller & Vidor Lumber Co. v. Railway Co., 192 S. W., 354; Railroad Co. v. Granite Co., 116 Me., 496; Holt v. Westcott, 43 Me., 445; Oil Co. v. Railroad Co., 147 Ga., 646; Railroad Co. v. Clay Co., 116 Wis., 465; Railroad Co. v. Peterson, 168 Wis., 193; Railroad Co. v. Orange Co., 232 Mass., 351; Coal, etc., Railroad Co. v. Buckhannon River Coal & Coke Co., 77 W. Va., 309; Baltimore & Ohio Southwestern Railway Co. v. New Albany Box & Basket Co., 48 Ind. App., 647; Holt v. Westcott, 43 Me., 445; So. Railway Co. v. So. Cotton Oil Co., 91 S. E. Rep., 876; Central Ry. of N. J. v. MacCartney, 68 N. J. L., 165; Atchison, Topeka & Santa Fé Ry. Co. v. Stannard Co., 99 Kan., 720; Central of Ga. Ry. Co. v. Birmingham Co., 9 Ala. App., 419; Bush v. Keystone Driller Co., 199 S. W. Rep., 597; Thomas v. Snyder, 39 Pa. St., 317.

Case cited and distinguished: N. Y. Central Railroad Co. v. Philadelphia & Reading Coal & Iron Co., 286 Ill., 267.

6. **CARRIERS.** Consignee is not liable for freight on goods delivered to his assignee.

The consignee of an interstate shipment of goods, who had made no contract with the carrier for the payment of the freight, and who assigned his interest in the goods before their delivery to him, and directed the delivery to the assignee which was made by the carrier, is not liable for the freight charges. (*Post, p.* 449.)

Cases cited and approved: N. Y. Central Railroad Co. v. Lehigh Stone Co., 220 Ill. App., 563; B., O. & S. W. R. R. Co. v. New Albany Box & Basket Co., 48 Ind. App., 647; Central of Ga. Ry. Co. v. Eatonton Lumber Co., 14 Ga. App., 302.

7. **CARRIERS.** Laches does not bar collection of freight from consignor.

The right of an interstate carrier to recover the freight charges from the consignor is a legal demand which can be barred only by the lapse of the period of limitations, and laches is no defense thereto. (*Post, p.* 449.)

8. **CARRIERS.** Carrier need not notify consignor of failure to collect freight.

An interstate carrier which agreed to collect the freight from the consignee is not required to give the consignor notice of its failure to collect the freight in order to enforce the consignor's primary liability for it. (*Post, pp.* 449, 450.)

9. **CARRIERS.** Assignment by consignee in whom title was vested does not affect consignor's liability for freight.

The fact that the consignee, in whom title to an interstate shipment of coal was vested assigned it to another, to whom it was delivered by the carrier without collection of the freight charges, does not alter the liability of the consignor for the freight. (*Post, p.* 450.)

Cases cited and approved: Lewis v. Galena & Chicago Union Ry. Co., 40 Ill., 281; Strahorn v. Union Stock Yards, etc., Co., 43 Ill., 424; Ryan v. Railway Co., 90 Minn., 12.

10. **BANKRUPTCY.** Filing claim in bankruptcy against consignee for freight does not waive right against consignor.

The fact that a carrier, which had delivered an interstate shipment to the assignee of the consignee without requiring payment of the freight charges as directed by the bill of lading, thereafter filed its claim for such freight charges against the trustee in bankruptcy of the assignee and recovered more than half of such charges, does not amount to a waiver of its right to collect the balance of the charges from the consignor, even if it would be held to its election if the assignee were still insolvent. (*Post, pp.* 450-452.)

Cases cited and distinguished: Y. & M. V. Railroad Co. v. Zemurray, 238 Fed., 789; Western Railway of Ala. v. Collins, 201 Ala., 455.

---

FROM KNOX.

---

Appeal from the Chancery Court of Knox County.— HON. CHARLES HAYS BROWN, Chancellor.

JAS. B. WRIGHT and JOHNSON & COX, for appellants.

A. C. GRIMM, for appellee.

MR. JUSTICE MCKINNEY delivered the opinion of the Court.

This suit was instituted for the purpose of recovering $331.39, balance of freight charges alleged to be due on eleven cars of coal shipped in the months of January and February, 1916, by the defendant, Southern Coal & Coke Company, from its mine at Gatliff, Ky., to John T. Solon at Toledo, Ohio.

Said coal was sold by the defendant to Solon f. o. b. cars at mine. This fact, however, was unknown to complainant. Gatliff is located on the Louisville & Nashville Railroad, and said coal was routed over said road to Cincinnati, Ohio; thence over the road of complainant to Toledo. The freight was not prepaid by the consignor. There was no express agreement at the time of shipment that Solon was to pay the freight charges, but the defendant had previously shipped him coal and the freight was collected by the complainant from him, or his assignee. Solon, it appears, was a coal broker, and sold the eleven cars of coal in question to the Toledo Ice & Cold Storage Company, located about eleven miles from complainant's road in Toledo on the Toledo, St. Louis & Western Railroad, known as the "Clover Leaf" Road.

It is inferable from the record, and the cause proceeds upon that theory, that said coal was delivered to the To-

ledo Ice & Cold Storage Company without any demand being made for the freight charges.

Mr. Wench, freight agent for the complainant, testified, in a general way, that he subsequently undertook to collect said freight from both the Toledo Ice & Cold Storage Company and Solon.

Subsequent to the delivery of said coal, the Toledo Ice & Cold Storage Company was adjudged a bankrupt.

The freight on said eleven cars of coal from Gatliff to Toledo was $665.48. The complainant filed its claim for said amount in said bankruptcy proceeding, alleging that the Toledo Ice & Cold Storage Company was indebted to it in said sum, and received on said claim, in said proceeding, $339.09. It then demanded the balance of $331.39 of Solon, which he declined to pay, and, without any previous notice that said freight had not been paid, or without any demand therefor, and nearly three years after the shipments were made, it filed the present bill.

Solon died July 1, 1920, and his estate was insolvent.

The answer filed by the defendant is as follows:

"I. That it does not owe the complainant the amount sued for or any part thereof.

"II. That said coal, referred to in said original bill, was sold by respondent to one John T. Solon, f. o. b. cars at mines, where shipments originated, that the carriers handling said shipments, including complainant, well knew said fact at the time, and had previously handled similar shipments, and looked to and collected the transportation charges from the said consignee thereof, or his assigns, by reason and account of which the complainant has estopped itself and is now estopped from asserting otherwise, that pursuant to an agreement or understanding between

complainant and said consignee, or his assigns, the complainant upon the arrival of said shipments, at the point of destination, delivered the same to said consignee or his assigns, and extended to said consignee, or his assigns, the sole credit for the transportation charges thereon, thus and thereby releasing and discharging the respondent from any and all liabilities touching said matters, in any event, and thereby estopping the complainant from asserting otherwise.

"III.   On information and belief, the respondent further shows to the court that complainant, without having previously made any demand on respondent, or given respondent any notice touching said matters, said complainant filed its petition, or proof of claim, predicated on said alleged transportation charges, in a bankrupcty or general creditor's proceedings against the Toledo Ice & Cold Storage Company, was indebted to it for said transportation charges, and that complainant, upon said theory, participated in the distribution of the assets of said Toledo Ice & Cold Storage Company, to the extent of approximately $334.07; that without the knowledge and consent of re spondent, said coal was diverted by said Solon with the acquiescence and consent of complainant to the said Toledo Ice & Cold Storage Company, about January or February, 1916, and that complainant by so participating and thus electing and so proceeding has thereby precluded and estopped itself, in any event."

Solon paid for the coal in February and March of 1916, and the defendant did not know that the freight had not been paid until the bill was filed in this cause.

The chancellor entered a decree in favor of the complainant for the balance of said freight, with interest.

Upon appeal, the court of civil appeals reversed the chancellor and dismissed the bill. The basis of its decision is thus stated in its opinion, to-wit:

"We do not rest this opinion upon the doctrine of estoppel, but upon the distinct proposition, or rather propositions, that complainant in this case turned over the coal after it arrived at destination under the bill of lading to another carrier, as its agent, to deliver the coal to the assignee of the original consignee, and, presumably, authorized its carrier agent to deliver the goods without demanding payment of the freight charges, after which it proceeded against the assignee of the original consignee as its debtor to collect the freight charges.

"We have been able to discover no case, or authority in any text-writer, treating of the subject of the rights of common carriers with respect to the collection of freight charges, that forbids them to waive the collection of freight charges by the original consignee, and having delivered the shipment of goods to the assignee of the original consignee, to treat said assignee as its debtor, and proceed against said assignee to collect its freight charges.

"To hold that a common carrier doing that could, after proceeding against its debtor to collect the freight charges, and having failed to collect all of the freight charges, it could delay about three years and then proceed against the shipper and collect the balance of the freight charges it failed to collect from its debtor, would, it seems to us, establish a most unequitable rule, under the operation of which might, could, and would arise serious inconveniences and obstructions to the normal course of an immense mass of business transactions necessitating the shipment of merchandise in interstate commerce over connecting lines of carriers."

The bills of lading issued to the defendant for said coal at the time of shipment are the standard form approved by the Interstate Commerce Commission, and contain the following provision, to-wit:

"The owner or consignee shall pay the freight, and average if any, and all other lawful charges accruing on said property, and if required, shall pay the same before delivery. If upon inspection it is ascertained that the articles shipped are not those described in this bill of lading, the freight charges must be paid upon the articles actually shipped."

The Interstate Commerce Act of 1887, as amended (U. S. Comp. St., section 8569[7]) is as follows: "Nor shall any carrier charge or demand or collect or receive a greater or less or different compensation for such transportation of passengers or property, or for any service in connection therewith, between the points named in such tariffs than the rates, fares, and charges which are specified in the tariff filed and in effect at the time; nor shall any carrier refund or remit in any manner or by any device any portion of the rates, fares, and charges so specified, nor extend to any shipper or person any privileges or facilities in the transportation of passengers or property, except such as are specified in such tariffs."

The policy of the courts has been to require a strict compliance with the above act with a view of prohibiting any discriminations or variations from same in favor of any shipper.

It is now well settled that where an erroneous rate is quoted and collected, the carrier has to collect the correct freightage even though it result in injury or great hardship to the shipper or consumer, and the carrier cannot,

by its conduct in this respect, estop itself to sue for and recover the lawful amount. *New York Central & Hudson River Railroad Co.* v. *York & Whitney Co.,* 256 U. S., 406, 41 Sup. Ct., 509, 65 L. Ed., 1016; *Railroad* v. *Fink,* 250 U. S., 577, 40 Sup. Ct., 27, 63 L. Ed., 1151; *Louisville & Nashville Railroad* v. *Maxwell,* 237 U. S., 94, 35 Sup. Ct., 494, 59 L. Ed., 853, L. R. A., 1915E, 665; *Chicago & Alton Railroad* v. *Kirby,* 225 U. S., 155, 32 Sup. Ct., 648, 56 L. Ed., 1033, Ann. Cas., 1914A, 501; *Texas & Pacific Railway* v. *Mugg,* 202 U. S., 242, 26 Sup. Ct., 628, 50 L. Ed., 1011.

Upon the same principle the more recent decisions are to the effect that the shipper cannot be relieved of his liability for freightage by express contract with the carrier releasing him and agreeing to look to the consignee for the reason that the law makes him primarily liable for the freight charge.

In *New York Central & Hudson Railroad Co.* v. *York & Whitney,* supra, the court used this expression: "The consignee could not escape the liability imposed by law through any contract with the carrier."

In *Wells Fargo & Co.* v. *Cuneo* (D. C.), 241 Fed., 727, the court said: "This defense sets forth that the shipment was 'delivered by the defendant and accepted by the plaintiff under a lawful agreement that the plaintiff would collect its lawful charges for transporting the same from the consignees thereof and from no other person.' This defense cannot avail defendant under *Atlas S. S. Co.* v. *Columbian Land Co.,* 102 Fed., 358, 42 C. C. A., 398; *Portland Flouring Mills Co.* v. *British & Foreign Marine Ins. Co.,* 130 Fed., 860, 65 C. C. A., 344; *Jobbitt* v. *Goundry,* 29 Barb. (N. Y.), 509; *Central Railroad of New Jersey* v. *MacCartney,* 68 N. J. Law, 165, 52 Atl., 575; and other cases unnecessary to cite.

" 'The rule is that the consignor is the party primarily liable for the payment of the freight, and this rule is enforced, independent of the question whether the consignor is the owner, and regardless of the question whether the payment of freight is secured by a lien on the cargo, because the consignor is the party for whom the service is performed.' *Portland Flouring Mills Co.* v. *British & Foreign Marine Ins. Co.,* supra."

In *Atchison, Topeka & Santa Fe Railway Co.* v. *Stannard & Co.,* 99 Kan., 720, 162 Pac., 1176, L. R. A., 1917C, 1124, the holding of the court is contained in syllabi 2 and 3, and is as follows:

"Since the adoption of the Interstate Commerce Act and its later amendments, it is unavailing as a defense to an action for the charges on an interstate freight shipment that the shipper had long been a patron of the railway company and had a special understanding and custom in his dealings with the company whereby the carrier was to be the agent of the consignee as to all shipments delivered by defendant, and that he guarantee the freight charges only upon condition that he should be promptly notified by the carrier if any consignee refused to accept a shipment and refused to pay the freight charges thereon.

"All special arrangements, agreements, customs, and understandings between individual shippers and interstate railroads, not open to all similar shippers on equal terms, nor on file with the Interstate Commerce Commission, nor sanctioned by that tribunal, are void, and a defense to an action for interstate freight charges based thereon is subject to demurrer or motion for judgment."

All of the authorities hold that the consignor, with whom the contract to ship is made, is primarily liable for the freight, and that this liability can only be discharged by a full payment either by the consignor or the consignee. See cases cited in note under paragraph 699, 10 Corpus Juris, 445; also, same section in Corpus Juris Annotations for 1921.

The reason of the rule as set forth in said note in 10 Corpus Juris, is as follows:

"(1) 'The shipper or consignor, whether the owner of the goods shipped or not, is the party with whom the owner or master enters into the contract of affreightment. It is he that makes the bailment of the goods to be carried, and, as the bailor, he is liable for the compensation to be paid therefor.' *Wooster* v. *Tarr,* 8 Allen (Mass.) 270, 271, 85 Am. D., 707. (2). One who employs another to perform a service for him is liable to pay him a reasonable compensation for his labor, and the consignor's liability for freight is not affected by the fact that the goods are delivered and that the consignee may become liable by receiving the goods. *Hayward* v. *Middleton,* 14 S. C. L., 121, 15 Am. D., 615, 8 S. C. L., 186. (3) 'The goods are only an additional security for the freight, and the responsibility of the owner or shipper of them for freight remains entire.' *Parke* v. *Austin,* 3 Hawaii, 586, 587."

It is generally held that where the consignee accepts the goods he impliedly obligates himself to pay the charges. 10 Corpus Juris, 446, and cases cited.

"Even though the bill of lading provided for delivery of the goods to the consignee on his paying freight, the consignor remains liable on the contract." 10 Corpus Juris, 445, and cases cited.

The clause in the bill of lading that "the owner or con-signee shall pay the freight" does not relieve the consignor, that clause being inserted as a recognition of the right of the carrier to retain the goods carried until his lien is satisfied by payment of the freight; it imposes no obliga-tion upon him to insist on payment before the delivery of the goods. If he sees fit to waive his right of lien and to deliver the goods without payment of the freight, his right to resort to the shipper for compensation still remains. *Miller & Vidor Lumber Co.* v. *Railway* Co. (Tex. Civ. App.), 192 S. W., 354; *Railroad Co.* v. *Granite Co.,* 116 Me., 496, 102 Atl., 298; *Holt* v. *Westcott,* 43 Me., 445, 69 Am. Dec., 74; *Oil Co.* v. *Railroad Co.,* 147 Ga., 646, 95 S. E., 251; *Rail-road Co.* v. *Clay Co.,* 116 Wis., 465, 166 N. W., 41; *Railroad Co.* v. *Peterson,* 168 Wis., 193, 169 N. W., 558; *Railroad Co.* v. *Orange Co.,* 232 Mass., 351, 122 N. E., 313; *Coal, etc., Railroad Co.* v. *Buckhannon River Coal & Coke Co.,* 77 W. Va., 309, 87 S. E., 376, L. R. A., 1917A, 663.

In the case of *New York Central Railroad Co.* v. *Phila-delphia & Reading Coal & Iron Co.,* 286 Ill., 267, 121 N. E., 581, the court said:

"The coal was delivered in Pennsylvania to a carrier on February 14, 1912, by said coal company, consigned to it-self at Chicago. At Buffalo the coal was delivered to ap-pellee, which transported it to Chicago, where it arrived February 19, 1912. On February 20, 1912, appellant by an order in writing directed that the car of coal be for-warded to A. F. Cook & Co., who had purchased the same and agreed to pay the freight thereon, at Pullman, Ill., via the Illinois Central railroad, the order stating, 'Charges follow.' The coal was delivered to Cook & Co. about March 6, 1912, and appellee at the time demanded the payment

of the freight charges, but the same were not paid. It appears that several demands were made later for the same but without avail, and on September 19, 1912, appellee brought suit against Cook & Co. in the municipal court of Chicago and recovered judgment for the amount of the freight on December 13, 1912, which judgment still remains unsatisfied. On September 22, 1914, appellant was first notified by appellee that the freight charges had not been paid. On the last-mentioned date Cook & Co. became and have ever since been insolvent and have ceased to do business. It appears from the evidence that Cook & Co., at the time the coal was delivered to them, had sufficient assets to pay the freight charges.

"The evidence in the record tends to show that shippers and merchants throughout the country ship great quantities of coal and other commodities to various persons throughout the United States over all the lines of the railroad companies, and that the almost universal practice and custom in such shipments is for the shippers not to prepay the freight charges thereon and for the railroad companies to waive their right to such prepayment and to accept payment thereof from the consignees.

"Counsel for appellant argues that by its action in extending credit to Cook & Co. and its neglect in not informing appellant that the freight bill had not been paid, so that appellant, until after Cook & Co. became insolvent, thought that said company had paid the freight, appellee waived all right to collect said bill from appellant, and is estopped under settled rules of law, on the facts as they appear in this record, from recovering said bill from appellant. Under all the authorities appellant was primarily liable for the lawful transportation charges, and the

weight of authority is to the effect that such liability can only be released by payment. *Baltimore & Ohio Southwestern Railway Co.* v. *New Albany Box & Basket Co.*, 48 Ind. App., 647; *Holt* v. *Westcott*, 43 Me., 445; *Southern Railway Co.* v. *Southern Cotton Oil Co.*, 91 S. E. Rep., 876; *Central Railway of New Jersey* v. *MacCartney*, 68 N. J. L., 165; *Atchison, Topeka & Santa Fe Railway Co.* v. *Stannard Co.*, 99 Kan., 720.

"The Federal Act of 1887 to regulate commerce controls in this and similar transactions. Appellee had no right to release appellant from liability to pay the freight, and had it attempted to do so such action would have been unlawful. 'The necessary effect of all these decisions construing and applying the Interstate Commerce Act, when considered together, is . . . that the carrier cannot by any act estop itself from exacting the lawful freight rate. If the carrier could so estop himself, then it would lie within the carrier's power by purposely putting itself in a position where it could not exact the lawful rate of a shipper it desired to favor, to render nugatory one of the main designs of the act,—the prevention of discrimination between shippers; and for the law to countenance the doctrine of estoppel in cases like this, is for the law to say, through the courts, that the carrier is estopped from doing what the statute mentioned plainly requires that it must do,—collect the lawful rate in all cases, and nothing greater and nothing less by any means or device whatsoever.' *Central of Georgia Railway Co.* v. *Birmingham Co.*, 9 Ala. App., 419. See, also, to the same effect, *Baltimore & Ohio Southwestern Railway Co.* v. *New Albany Box & Basket Co.*, supra; *Bush* v. *Keystone Driller Co.*, 199 S. W. Rep., 597.

"Counsel for appellant makes the further suggestion that appellee's claim for recovery of these freight charges should be defeated because of laches in the delay of two and a half years before attempting to recover for the same. Under the holding of the court in *Baltimore & Ohio Southwestern Railway Co.* v. *New Albany Box & Basket Co.,* supra (an action of a similar character), no question of laches could arise, the suit being one at law.

"Counsel for appellant also argues with great earnestness that the federal law as to interstate commerce shipments should be so construed as to hold that in every contract of shipment it is implied that where payment of freight is not made by the consignee before delivery, notice of such fact must be given to the consignor in order to hold him liable in the event of the consignee's insolvency. No authorities are cited to uphold this argument. The act to regulate interstate commerce does not so provide. To so construe it would be contrary to the uniform holdings of the courts on this question. The wisdom of inserting such a provision in the act regulating interstate commerce should be addressed to the legislative branch of the federal government and not to the courts.

"The authorities mainly relied on by counsel for appellant to hold that the doctrine of estoppel ought to apply as against appellee, such as *Central Railway of New Jersey* v. *MacCartney,* supra, and *Thomas* v. *Snyder,* 39 Pa. St., 317, are decisions that refer in no way to the federal act regulating interstate commerce and therefore can have no bearing on the question here under consideration.

"The judgment of the appellate court will be affirmed."

Here we have a debt, for which the defendant is primarily liable, and which, under the authorities, can only be met by payment.

The complainant had no contract with either Solon or the Toledo Ice & Coal Storage Company.   Under the facts of this cause, Solon was not liable to it.

In 10 Corpus Juris, 446, it is said:   "Where a consignee, in a bill of lading stipulating that the owner or the consignee shall pay the freight, assigns the bill of lading before delivery, and the carrier makes delivery to the assignee who purchased the goods from the consignee, the consignee is not liable for the freight, unless the assignee receives the goods as his agent."

The Toledo Ice & Cold Storage Company, by accepting the coal, became bound for the payment of the freight; but, under the authorities, this did not relieve the defendant of its liability.

The complainant attempted to collect the freight from the assignee, and succeeded in realizing more than one-half of the amount due.

All of the authorities hold that the carrier cannot be precluded from collecting from the consignor, and such in effect was the holding of the court of civil appeals.

Laches, in such case, is no bar, for the reason that the demand is a legal one that can be instituted any time within six years. *New York Central Railroad Co.* v. *Lehigh Stone Co.,* 220 Ill. App., 563; *Baltimore, Ohio & Southwestern Railroad Co.* v. *New Albany Box & Basket Co.,* 48 Ind. App., 647, 94 N. E., 909, 96 N. E., 28; *Central of Georgia Railway Co.* v. *Eatonton Lumber Co.,* 14 Ga. App., 302, 80 S. E., 725.

We have been cited to no authority, and have been unable to find any, requiring the carrier to notify the consignor where the freight has not been paid by the consignee or its assignee.   It was held that no such notice was re-

quired in *New York Central Railroad Co.* v. *Lehigh Stone Co.,* supra.

The fact that Solon assigned the coal to the Toledo Ice & Cold Storage Company in no wise altered the case. The title to the coal was in Solon, and he had a right to do with it whatsoever he pleased. *Coal, etc., Railroad Co.* v. *Buckhannon River Coal & Coke Co.,* supra; *Lewis* v. *Galena & Chicago Union Railway Co.,* 40 Ill., 281; *Strahorn* v. *Union Stock Yards, etc., Co.,* 43 Ill., 424, 92 Am. Dec., 142; *Ryan* v. *Railway Co.,* 90 Minn., 12, 95 N. W., 758; Hutchinson on Carriers, par. 660.

The court of civil appeals was of the opinion that the complainant, by filing its claim in the bankruptcy court, waived its claim against the defendant. But we are unable to find in the record any evidence of any intention on the part of complainant to waive it claim against the defendant railroad unless its attempt to collect from the Toledo Ice & Cold Storage Company, as a matter of law, had such effect. Ordinarily, if a party has a claim against two persons, a collection of a part thereof from one would not prevent a recovery of the balance from the other. But upon the authorities referred to above, we are of the opinion that the carrier cannot waive liability as to the consignor.

We find two cases that, in a measure, take a contrary view. In the case of *Y. & M. V. Railroad Co.* v. *Zemurray* 238 Fed., 789, 151 C. C. A., 639, the holding of the court is contained in the headnote as follows:

"Though the carrier can, notwithstanding the usual clause of the bill of lading as to delivery to the consignees on payment of the freight, and regardless of the ownership of the goods, waive its lien and recover the freight

---

---

from the consignor, where the carrier attempted to collect from the consignee, but through error collected only part of the amount due, and could thereafter have collected the balance from the consignee who owned the goods, from other goods in his possession, it will be bound by its election to collect from the consignee and not permitted to sue the consignor for the balance."

The other case is that of *Western Railway of Alabama* v. *Collins,* 201 Ala., 455, 78 South., 833.   Collins assigned goods at New Orleans to himself in Alabama.   He attached a draft for the goods to bill of lading with direction to notify one Scott.   Scott paid the draft and thereby procured the bill of lading.   He then went to the railroad and paid the freight demanded and secured the goods.   A mistake was made by the agent of the railroad in not collecting enough freight, and suit was instituted against Collins to collect the balance thereof.   The court denied a recovery and said:

"It chose to collect the charges from Scott, who was the then owner of the goods.   Having so chosen, and collected a part from him, it must from him collect all.   It is true that there is no question of estoppel, by its collecting a part of the charges only and delivering the goods to Scott, who was then the owner; but there is the question of fair dealing, which does and ought to control."

The court concluded its opinion as follows:   "It is true this is not, strictly speaking, a case of election, but is one of fair dealing, to promote justice between all the parties."

The decision in the Zemurray Case recognized the general rule of continued liability on the part of the consignor for the freight charges, but made an exception, based upon the idea that the consignee, who was the owner of the goods,

had other property out of which the freight charges could have been collected.

In the Collins Case, which was decided upon the authority of the Zemurray Case, the court also recognized the general rule of continued liability of the consignor for the freight charges, but made an exception based upon the doctrine of "fair dealing." In both cases it is inferable from the records that the consignees were solvent and had accepted the goods, which distinguishes those cases from the one under consideration.

In our opinion, upon the authorities hereinabove referred to, the consignor can only be relieved from liability by paying the freight except where the statute of limitations has intervened, and this is undoubtedly true where the consignee is insolvent.

As was said by the supreme court of the United States in *Railroad* v. *Fink,* supra: "Instances of individual hardship cannot change the policy which Congress has embodied in the statute in order to secure uniformity in charges for transportation."

This principle applies in the instant cause, and since the law makes the consignor primarily liable for freight charges, the agent of the transportation company cannot relieve a consignor from such liability by agreeing to look to the consignee, or by any act on his part.

It results that the decree of the court of civil appeals will be reversed, and that of the chancellor affirmed, with costs.