### CLEVELAND, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY COMPANY v. HAZARD BLUE GRASS COAL CO.

Eastern Section.   July 14, 1928.

Petition for Certiorari denied by Supreme Court, October 6, 1928.

Jas. J. McLaughlin and Cox & Tay.lor, all of Johnson City, for plaintiff in error.

Sells, Simmonds & Bowman, all of Johnson City, for defendant in error.

SNODGRASS, J. This is an action against the consignor by the delivering carrier, for freight on an interstate shipment of coal from Hazard, Kentucky to Indianapolis, Indiana.

The freight amounted to $136.56 according to the rate and the amount contained in the L. & N. car No. 33758, and it was consigned to the Hoosier City Coal Co., the shipper being the defendant, Hazard Blue Grass Coal Co.

The cause originated before a justice of the peace, where the plaintiff lost and appealed to the law court of Johnson City, where it was again tried before the judge' and jury and, notwithstanding plaintiff's overruled motion for a directed verdict, the jury found the issues in favor of the defendant, and the cause was dismissed. Plaintiff however made a motion for a new trial, and on the same being overruled has perfected an appeal to this court, making the following two assignments of error:

"I. The court erred in failing and refusing to peremptorily instruct the jury to return a verdict in favor of the plaintiff, upon motion of the plaintiff, which motion was made at the close of the plaintiff's evidence, and renewed at the close of all the evidence, because:

"(a) The defendant, Hazard Bluegrass Coal Company a carload of coal to the Hoosier City Coal Company at Indianapolis, Indiana. The plaintiff sought to collect the freight from the consignee, Hoosier City Coal Company, but was unable to make said collection of freight after exhausting all efforts to do so. The shipper cannot be relieved of his liability for freight because the law makes him primarily liable for all freight charges. Such shipper is liable independent of the

question whether it is the owner and regardless of the question whether the payment of freight is secured by lien or not because the shipper is the party for whom the service was performed. The shipper, in this case the defendant herein, being primarily liable for the freight, cannot be relieved of liability in any other way except by payment, unless the statute of limitations has intervened. This is true as a general proposition, and certainly true where the consignee becomes insolvent and collection cannot be realized from such consignee.

"(b) There was no question of fact to be submitted to the jury. The bill of lading was signed by the defendant without qualification; the coal was transported and delivered as contracted; the consignee did not pay the freight charges, and the only remaining question was a question of law, to-wit, whether the defendant was liable therefor. And the court erred in not so holding.

"II. The court erred in excluding from the jury Exhibit 'A' attached to the deposition of T. A. Conner, a witness for the plaintiff, such exclusion being predicated upon the idea that the said exhibit had been improperly certified to, because it was not necessary for such exhibit to be certified to as required by the Acts of Congress, but the certificate made was sufficient, if required, and the said judgment having been identified and testified to by the witness it was error for the court not to allow the said exhibit to be filed and the testimony of the witness dealing therewith admitted."

There is some confusion about this second assignment. On its face it goes only to the exclusion of Exhibit "A" to the deposition of T. A. Conner, but counsel on the other side treats it as applying to the certified copy of a judgment which the plaintiff obtained in the sum of $136.56 against one F. Smith Kirtley, on the 5th day of January, 1924 in the District Court of the U. S. for the District of Indiana, and an execution issued thereon with a return of nulla bona.

While a record of that certified by the clerk does appear with a batch of exhibits bound together and brought up with the record under agreement, this particular record does not appear as Exhibit "A", but as Exhibit "C", and the execution is Exhibit "D". It does appear however from the record that this particular item of evidence covering the judgment and execution was excluded on defendant's objection that it was not properly certified, and of course, if the assignment can be construed as covering the court's action to that extent, it would not be well taken; but as excluding the Exhibit "A" to Conner's testimony, which by reference to the exhibits brought up is found to be a copy of the original bill of

lading, even though found here to be with the batch containing the alleged record of a judgment and execution, being properly singled out as it was, it was allowable to refer to and make this single paper an exhibit as a part of the testimony of Mr. Conner establishing a lost paper and its contents, without reference at all to any alleged judgment or execution. Nor would the ruling of the court on this particular exception going to the judgment carry with it an exclusion of the particular paper designated as Exhibit "A", being the copy of the bill of lading.

So it would appear that there had been no exclusion of Exhibit "A", but if there had been it would have been improperly done; for such a paper, in the connection in which it was asked to be filed as Exhibit "A" to Conner's deposition, did not come under any requirement of certification under the Act of Congress. But as it was sought to be filed it was authorized to be approved by the witness as a correct copy of a lost paper, if he knew it to be such. However, instead of the court excluding it, as indicated by the assignments of error, to which alleged ruling we have not been cited, our examination of the record has discovered that he held it competent, though he did exclude, and properly, the record of the judgment and execution.

If, however, in order to a recovery against the consignor it be necessary to prove an exhaustion of remedy against the consignee, the admission of the record of the judgment and execution would not have availed to establish that fact, because the judgment appears to have been taken against F. Smith Kirtley, and not against the consignee. We are aware that Mr. Conner assumed to say F. Smith Kirtley was the owner of the Hoosier City Coal Company, the consignee, but this left the matter uncertain and speculative as to whether the consignee was a corporation of which he owned all the stock, or merely a trade name. If a corporation the judgment should have been against it; but if a trade name, that was not proven, though counsel insisted it was a trade name. So the proof would have fallen short of showing an exhaustion of remedy.

But we do not believe, under our Tennessee case of Cleveland R. R. Co. v. Southern C. & C. Co., 147 Tenn., 433, 248 S. W., 297, and the authorities there cited, that the plaintiff was required to exhaust any remedy it may have had against the consignee, to whom it appears the shipment was erroneously turned over by some of the subordinate officers or employees of the plaintiff. Nor do we think any laches are available as a defense in this law case under said holding, which is equally antagonistic to any estoppel insisted upon, or any necessity for notice.

The case of C. C. C. & St. Louis Ry. Co. v. Coal & Coke Co., supra, also referred to two cases, Y. & M. V. Railroad Co. v. Zemurray,

238 Fed., 789, 151 C. C. A., 639, and Western Railway of Alabama v. Collins, 201 Ala., 455, 78 South., 833, as taking in a measure a contrary view to those being expressed, in that it was said in the first case that—

"Where the carrier attempted to collect from the consignee, but through error collected only part of the amount due, and could thereafter have collected the balance from the consignee, who owned the goods, from other goods in his possession, it will be bound by its election to collect from the consignee and not permitted to sue the consignor for the balance."

And in the second case, that

"It (meaning the plaintiff) chose to collect the charges from Scott, who was the then owner of the goods. Having so chosen, and collected a part from him, it must from him collect all. It is true that there is no question of estoppel, by its collecting a part of the charges only and delivering the goods to Scott, who was then the owner; but there is a question of fair dealing, which does and ought to control." And further:

"It is true this is not, strictly speaking, a case of election, but is one of fair dealing, to promote justice between all parties."

Our court in the case referred to nevertheless, while distinguishing these two cases from the one it was deciding, indirectly expressed its disapproval of them in the principles it decided. In concluding its reference to these cases it said:

"In our opinion, upon the authorities hereinbefore referred to, the consignee can only be relieved from liability by paying the freight, except where the statute of limitation has intervened, and this is undoubtedly true where the consignee is insolvent." Continuing the court said further:

"As was said by the Supreme Court of the United States in Railroad v. Fink, supra, instances of individual hardship cannot change the policy which Congress has embodied in the statute in order to secure uniformity in charges for transportation. This principle applies in the instant cause, and since the law makes the consignor primarily liable for freight charges, the agent of the transportation company cannot relieve a consignor from such liability by agreeing to look to the consignee, or by any act on his part."

Appellee insists that in the case of L. & N. R. R. v. Central Iron & Coal Co., 265 U. S., 59, 68 L. Ed. 900, that there are two propositions laid down that relieves the shipper in this case, i. e.:

"1st. That one delivering freight to a carrier for transportation may be found not to be primarily liable for freight charges where it appears from the bill of lading or otherwise that he was neither

the owner nor the person on whose behalf the shipment was being made, but that the goods were either owned by, or the shipment was on behalf of, a third person." And—

"2nd. That the acceptance by the consignee of freight delivered to a carrier for transportation satisfies the obligation of the shipper that he (the consignee) will accept it, and relieves him (the consignor) of his secondary obligation for freight charges."

While we think the case referred to does establish the first proposition, it does not the latter, at least to the point of discharging the shipper or consignor under the facts of this case. Counsel for appellee thinks there is a conflict between the case of L. & N. R. R. v. Central Iron & Coal Co., supra, and the case of Cleveland, etc., R. v. Southern Coal & Coke Co., supra, but we do not think there is such conflict, nor that the case at bar is the same as L. & N. R. R. v. Central Iron & Coal Co., supra.

In the present case the bill of lading or contract is signed by Hazard Bluegrass Coal Company as shipper. It is true there is added "#2" to the name, but we do not think the addition was at all misleading, but was meant to distinguish the mine from which it was shipped. The contract thus on its face became the contract of the shipper, Hazard Bluegrass Coal Company, and though as a matter of fact it may have been an accommodation obligor of a selling agent, with whom it seems it had a contract whereby under such shipments the selling agent was to become responsible for the freight as well as a guarantor for the payment of the coal, which it could discharge by itself paying for the coal after deducting its eight per cent commission on such sale, it was nevertheless the obligation of the Hazard Bluegrass Coal Company under its contract with the Reliance Coal & Coke Co. to do the shipping in its own name, which it did in this instance, signing as per the contract of shipment, which implied its own obligation to pay the carrier for such freight, notwithstanding its contract may have in effect guaranteed its return from the Reliance Company. Nor would we think a knowledge of such arrangement upon the part of the carrier prevented its obligation attaching under its contract, as there was no reason existing why, if it desired and had contracted to do so, it should not be bound.

The following is set out in appellee's brief as the holding in the case of L. & N. R. R. v. Central Iron & Coal Co., supra:

"Ordinarily, the person from whom the goods are received for shipment assumes the obligation to pay the freight charges; and his obligation is ordinarily a primary one. This is true even where the bill of lading contains, as here, a provision imposing liability upon the consignee. For the shipper is presumably the consignor; the transportation ordered by him is

presumably on his own behalf; and a promise by him to pay therefor is inferred (that is, implied in fact), as a promise to pay for goods is implied when one orders them from a dealer. But this inference may be rebutted, as in the case of other contracts. It may be shown, by the bill of lading or otherwise, that the shipper of the goods was not acting on his own behalf; that this fact was known by the carrier; that the parties intended not only that the consignee should assume an obligation to pay the freight charges, but that the shipper should not assume any liability whatsoever therefor; or that he should assume only a secondary liability. In this case, the bills of lading acknowledge receipt of the coke from the Central Company. But it did not sign them. Nor was it described therein as the consignor. There was no clause by which the shipper agrees expressly either to pay the freight charges or to guarantee their payment. The goods received were not declared to be deliverable to the Central Company's order. On the contrary, the form of the bills of lading indicated that it was neither the owner nor the person on whose behalf the shipment was being made; and that Tutwiler & Brooks were either the owners or the persons in whose behalf the shipment was being made. On these facts, the trial court was justified in finding that the Central Company did not assume the primary obligation to pay the freight charges. 68 L. Ed., 903.''

It would seem that a mere agent to deliver to the carrier freight consigned to another, it being known to the carrier that such delivery belonged to another, who was the real shipper, would not and should not be held as bound for the freight, even though it might be recited in the receipt that it was received from him, without his agency appearing. But there is no reason why even such agent serving a contract obligation with a third party or the owner may not sign his name to the contract and become bound thereby, either individually or with the owner, notwithstanding the carrier may have known the actual relationship between the parties. We think the contract between the Hazard Bluegrass Coal Company and the Reliance Coal & Coke Company, its selling agent, notwithstanding any construction that witnesses have put upon it, which contract appears in the record, exhibits the defendant in this case as the proper shipper, and that its signed contract evidenced by the bill of lading presents its own primary obligation for the freight.

There being no dispute as to the amount that was due, the court should have directed a verdict in favor of the plaintiff for the amount claimed, $136.56. We think when properly considered and

analyzed there was no proof tending to show why the Hazard Blue-grass Coal Company should not have been held liable.

The first assignment is therefore sustained, the judgment of the lower court reversed, and judgment will be entered here in favor of the plaintiff and against the defendant for the freight, with interest since the bringing of the suit.

Portrum and Thompson, JJ., concur.