SOUTHERN RY. CO. *v.* MAYER MYERS PAPER CO.

(*Nashville,* December Term, 1949.)

Opinion filed July 15, 1950.

KING, EWING & LAUGHLIN and JAMES L. GARTHRIGHT, Jr., all of Memphis, for plaintiff in error.

ROSENFIELD, BOROD, FONES & BOGATIN, of Memphis, for defendant in error.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

This is a suit by the Southern Railway Company, hereinafter identified as Carrier, to recover from the Mayer Myers Paper Company of Memphis the freight

charges on a car of paper shipped from Mechanicsville, New York to Memphis and there delivered to the Mayer Myers Paper Company. The Paper Company had contracted with the Kline Paper Stock Company of Mechanicsville, New York for the purchase of a car of paper for a stipulated price. It was a part of the contract that the Kline Paper Company would pay the freight charges. This shipment was the result of that contract, but the Kline Paper Company had not prepaid the freight charges.

The Carrier (Southern Railway Company) did not demand payment of the freight when it delivered this merchandise to the Mayer Myers Paper Company. However, this paper company was on an approved credit list whereby under the regulations of the Interstate Commerce Commission the Carrier was authorized to extend it credit on freight charges for a period of not more than ninety-six hours.

The Carrier made no representation to the paper company as to whether the freight charges had been paid. Delivery without a precedent demand for payment of these charges was not, in any event, an implied representation that the charges had been paid since the paper company was on the approved credit list of this Carrier. However, the paper company accepted delivery under the belief that these charges had been paid. It is not disclosed by the record that the Carrier was aware of this erroneous belief.

Had Mayer Myers Paper Company been informed that the freight charges had not been paid it would either have refused delivery or paid these charges and deducted such payment from the purchase price in remitting to Kline Paper Company. Insofar as this case is con-

cerned, it is sufficient to say that this erroneous belief upon the part of Mayer Myers Paper Company was due in the first instance to the fact that the Kline Paper Company sent to Mayer Myers an incomplete copy (purportedly complete) of its telegram to a connecting carrier at Mechanicsville, New York, wherein the Carrier was directed to reship to Mayer Myers Paper Company this car of paper which had been originally shipped by a consignor from Ondawa, New York to the Kline Paper Company, as consignee, at Mechanicsville, New York. Had this telegram been correctly quoted it would have contained the words ''all charges to follow car''. These words were omitted from the copy which Kline sent to its consignee, Mayer Myers Paper Company.

Approximately thirteen months after the delivery of this merchandise the Mayer Myers Paper Company received a bill from the Carrier for these freight charges, and thereby became informed of the fact, not previously known to it, that these freight charges had not been paid.

Mayer Myers immediately sought by letters to induce its seller consignor, Kline Paper Company to pay these freight charges as per their agreements. No reply to these letters was received, and the Kline Paper Company did not pay these charges. It is not shown by the record what the financial status of the Kline Paper Company was, if in existence, at this subsequent period. Mayer Myers Paper Company, in turn, declined to pay the Carrier. Therefore, the Carrier brought this suit.

Mayer Myers Paper Company, hereinafter referred to as consignee, denied liability on the ground that the Railroad had ''negligently misled a (the) consignee as to prepayment by consignor of freight charges to consignee's injury and detriment'' and would not, there-

fore, ''be permitted some thirteen months thereafter, to collect those charges—using as a shield against its own negligence a Federal Statute which was enacted for another and different purpose''. The statute referred to is the Interstate Commerce Act enacted for the purpose of securing uniformity in charges for transportation of freight or passengers, and to prevent discrimination in such charges. The Act insofar as pertinent here is carried in the Federal Code under Title 49 U. S. C. A. Section 6(7).

The Circuit Court sustained this defense, presumably upon the authority of the holding of the United States Sixth Circuit Court of Appeals in the case of *Davis* v. *Akron Feed & Milling Company,* 296 F. 675. The Carrier has appealed directly to this Court because the facts were stipulated.

 In the case of *N. C. & St. L. Railway* v. *Commercial Nursery Co.,* 8 Tenn. App. 16, 21 (Certiorari denied), the Court, quoting from an opinion of the United States Supreme Court, *L. & N. R. Co.* v. *Central Iron & Coal Co.,* 265 U. S. 59, 44 S. Ct. 441, 68 L. Ed. 900, held that ''if a shipment is accepted, the consignee becomes liable, as a matter of law, for the full amount of the freight charges whether they are demanded at the time of the delivery, or not until later''. This conclusion was in accord with the holding of this Court that the consignee by accepting the shipment ''became bound for the payment of the freight''. *Cleveland C. C. & St. L. R. Co.* v. *Southern Coal & Coke Co.,* 147 Tenn. 433, 449, 248 S. W. 297, 301. This is conceded by consignee to be an accurate statement of the rule. It insists, however, that the Carrier is estopped from the collection of these freight charges because it, the Carrier, did not in-

form this consignee at the time of delivery that the freight had not been paid. This is defined in the stipulation as being an "inadvertence on the part of" the Carrier.

Title 49 U. S. C. A. Section 6(7) provides: ". . . nor shall any carrier charge or demand or collect or receive a greater or less or different compensation for such transportation of passengers or property, or for any service in connection therewith, between the points named in such tariffs than the rates, fares, and charges which are specified in the tariff filed and in effect at the time; nor shall any carrier refund or remit in any manner or by any device any portion of the rates, fares, and charges so specified, nor extend to any shipper or person any privileges or facilities in the transportation of passengers or property, except such as are specified in such tariffs."

The question then is whether the so called "inadvertence of the Carrier" in not informing consignee at the time of delivery and for thirteen months thereafter that the freight charges had not been paid makes this case an exception to the plain mandate of the above quoted statute. If such be the result, then there is necessarily applicable the observation made by this Court in *Cleveland C. C. & St. L. R. Co.* v. *Southern Coal & Coke Co.*, supra, 147 Tenn. at page 447, 248 S. W. at page 301, as follows: "If the carrier could so estop himself, then it would lie within the carrier's power, by purposely putting itself in a position where it could not exact the lawful rate of a shipper it desired to favor, to render nugatory one of the main designs of the act,—the prevention of discrimination between shippers; and for the law to countenance the doctrine of estoppel in cases like this, is for the law to say, through the courts, that the carrier is

estopped from doing what the statute mentioned plainly requires that it must do,—collect the lawful rate in all cases, and nothing greater and nothing less by any means or device whatsoever.''

There might be appropriately added the further observation that the consignee could contribute to the success of the ''inadvertence'' device by likewise inadvertently failing to do that which ordinary prudence seems to require at the time the goods are accepted, to wit, inquire of the Carrier as to whether the freight charges have been paid.

This entire question was dealt with at length in our cases of *N. C. & St. L. Railway* v. *Commercial Nursery Co.,* and *Cleveland C. C. & St. L. Ry. Co.* v. *Southern Coal & Coke Co.,* supra. Those cases made abundant reference to and quotations from the holdings of United States Supreme Court and of State Courts of last resort. A further review of the question is unnecessary. Under the principles announced in those cases and, aside from those cases, on principle, we think there is no escape from the conclusion that under the plain mandate of the Federal Statute quoted, the Carrier here is not and cannot be estopped from the collection of these freight charges from this consignee by reason of its so called ''inadvertence''. An opposite conclusion would seem to amount to a disobedience of the Federal Act mentioned notwithstanding the fact that: ''The policy of the courts has been to require a strict compliance with the above act with a view of prohibiting any discriminations or variations from same in favor of any shipper.'' *Cleveland C. C. & St. L. Ry. Co.* v. *Southern Coal & Coke Co.,* supra, 147 Tenn. at page 441, 248 S. W. 299.

■■ In dealing with this statute, the Courts have frequently commented upon the fact that the. duty of the consignor and consignee to pay these freight charges is not to be measured merely by the apparent equities between the carrier, on the one hand, and the consignor or consignee, on the other hand. It is a duty owed likewise to the public in order to prevent discrimination and the damage which discrimination can inflict. As observed in the *So. Coal & Coke Co.* case, supra, in quoting from a United States Supreme Court case, "instances of individual hardship cannot change the policy which Congress has embodied in the statute in order to secure uniformity in charges for transportation." 147 Tenn. at page 452, 248 S. W. at page 302.

To sustain its insistence, consignee relies entirely upon the holding of the United States Circuit Court of Appeals, Sixth Circuit, in *Davis* v. *Akron Feed and Milling Co.,* 296 F. 675, and the Washington, D. C. case of *Cincinnati Northern R. Co.* v. *Beveridge,* D. C., 8 F. (2d) 372. It is unnecessary to express any opinion as to the merits of the criticism which other Courts have made of the holdings in these cases. This is because the controlling fact in each of those cases makes the holding in those cases entirely inapplicable to the case at bar. In each of those cases the Carrier at the time of delivery affirmatively and expressly represented to the consignee that the freight charges had been paid. The consignee acted to its prejudice upon this false representation of the Carrier who later sued the consignee for those same freight charges. There was no misrepresentation here. At most, the Carrier was guilty only of a negative "inadvertence" which should not have misled the consignee who failed to inquire whether the freight charges had

been paid, notwithstanding its presumed knowledge of the fact that it was liable for these charges if they had not been paid.

The judgment of the Circuit Court will be reversed and judgment entered here in the sum of $314.37 without interest against the Mayer Myers Paper Company in favor of Southern Railway Company. All costs will be adjudged against Mayer Myers Paper Company.

All concur.