PLASTIC PRODUCTS Co. *v.* COOK TRUCK LINES, INC.

(*Nashville,* December Term, 1952.)

Opinion filed July 17, 1953.

464

JOHN PAUL JONES, of Memphis, and WRAPE & HERNLY, of Memphis, of counsel, for plaintiff, defendant in error.

DON G. OWENS, JR., and NELSON, NORVELL, OWENS & FLOYD, all of Memphis, for defendant, plaintiff in error.

MR. JUSTICE GAILOR delivered the opinion of the Court.

This appeal presents a suit by the Cook Truck Lines, Inc., to recover from Plastic Products Company freight charges in the amount of $163.15, on a shipment in interstate commerce from Pittman, New Jersey, to Memphis, Tennessee.

In the General Sessions Court of Shelby County, judgment was rendered for the defendant, and plaintiff

perfected appeal to the Circuit Court, where, on a stipulation of facts, the judgment was reversed. The defendant has perfected this appeal. Since assignments of error made to support the appeal fail to comply with our Rule 14(2), 185 Tenn. 867, and without specification as therein required, assert merely that the judgment below was erroneous as being contrary to the law and the facts, we do not consider them seriatim.

The salient stipulated facts are as follows: Plastic Products Company of Memphis ordered 121 cartons of phonograph record compound, weighing 6,000 pounds, from H. F. Lenahan Associates, Inc., in Pittman, New Jersey. Shipment was made c. o. d. by truck line. Super Service, the initial carrier, brought the goods to Nashville, Tennessee, where Cook Truck Lines, Inc., the delivering carrier, picked up the goods and delivered them to Plastic Products Company, in Memphis.

En route between Pittman, New Jersey, and Nashville, Tennessee, Super Service, in error, changed the bill of lading from "c. o. d." to "prepaid." When the goods were delivered to Plastic Products Company, in Memphis, they were received on a prepaid freight bill.

Thereafter, Plastic Products Company used part of the record compound in manufacture, and rejected the rest. Settlement was made between the consignor in New Jersey, and the consignee in Memphis, for the rejected goods, on the erroneous assumption that the freight had been paid.

After this settlement, demand was made on the consigneee in Memphis, for $163.15, being the entire freight charge from Pittman, New Jersey, to Memphis, Tennessee, and consignee was advised that through the mistake of Super Service, the initial carrier, the shipment had

been handled as if it was "prepaid," when in fact, it was "c. o. d."

It is further stipulated that Super Service had been reimbursed by Cook Truck Lines, Inc., for freight charges from Pittman, New Jersey, to Nashville, Tennessee.

Finally, Plastic Products refused to make payment and this litigation ensued with the results in the lower Courts noted above.

In the brief of plaintiff in error it is conceded that:

"This being an action respecting charges for transportation in interstate commerce, the issues must be decided according to the paramount United States statutes so far as they are applicable."

Plaintiff in error admits further (Br. p. 6):

"1. An interstate carrier cannot by any action estop itself from exacting the lawful freight rate and recovering the full amount from the consignee or consignor. It acts as a trustee for the public interest.

'2. Instances of individual hardship cannot change the policy which Congress has embodied in the statutes in order to secure unity in charges for transportation.

"3. Equitable considerations may not serve to preclude the carrier from recovering the full amount of a lawful traffic charge."

With these concessions, in our view, the only questions presented by this appeal were asked and answered in a federal case, as follows:

"Can a consignee, who is not at any time the owner of the goods shipped, who has not agreed with either the shipper or the carrier that he will pay the freight, who accepts the goods upon the carrier's representation that the freight has been prepaid, be bound by such acceptance to pay the freight?

＊　　　＊　　　＊　　　＊　　　＊　　　＊

"＊　＊　＊　if the doctrine of estoppel cannot be invoked, where the consignee paid the demanded rate, thinking it was the filed and posted rate, the carrier thereby losing its lien for the unpaid portion of the freight, it is not perceived why the consignee, in receiving the goods, acting under a mistaken belief that the shipper had fully paid the freight, can do so." *Great Northern Ry. Co. v. Hyder, D. C.,* 279 F. 783, 785-786.

It is conceded that the I. C. C. regulations apply alike to interstate carriers by rail and by truck. *Sun Insurance Office Limited of London v. Be-Mac Transport Co., Inc.,* 8 Cir., 1942, 132 F. (2d) 535. Our recent decision in *Southern Ry. Co. v. Mayer Myers Paper Co.,* 191 Tenn. 164, 232 S. W. (2d) 20, though in point, so far as the liability of the consignee is concerned, is nevertheless distinguishable to some extent, on the facts. The Paper Company had a legal credit arrangement with the Railroad, and by receiving the goods, was under quasi contractual obligation to pay for their transportation. "For, under the rule of the Fink Case, if a shipment is accepted, the consignee becomes liable, as a matter of law, for the full amount of the freight charges, whether they are demanded at the time of delivery, or not until later." *Louisville & N. R. Co. v. Central Iron & Coal Co.,* 265 U. S. 59, 44 S. Ct. 441, 444, 68 L. Ed. 900, 904. *Pittsburyh C. C. & St. L. R. Co. v. Fink,* 250 U. S. 577, 40 S. Ct. 27, 63 L. Ed. 1151.

The gist of the argument of the plaintiff in error is that there are two implied exceptions to this rule, that (1) the liability of the consignee is dependent either upon a contractual or quasi contractual relation of the consignee

with the delivering carrier, or (2) that if the parties so contract, the liability of the consignee is secondary, and rises only after an unsuccessful attempt to collect from the shipper, who by delivering the goods to the initial carrier, created a quasi contractual obligation to pay for their transportation.

Neither of these exceptions is to be inferred from any language used in the rule from the Central Iron & Coal Company case quoted above. Furthermore, if, in the present case, the shipment had been made as the shipper intended, and without mistake by the initial carrier, the consignee would have had to pay the freight when the goods were delivered. So far as the parties to the present litigation are concerned, the only principle that could intervene to cancel that obligation would be an estoppel, and it is conceded that a plea of estoppel is not available to the consignee here. *Scott Paper Co.* v. *Marcalus Mfg. Co.*, 326 U. S. 249, 66 S. Ct. 101, 90 L. Ed. 47.

The argument of plaintiff in error that admitting liability, such liability was secondary, and could only be realized after a showing that an unsuccessful attempt had been made to collect from the shipper, is not supported by the contract actually made by the shipper and consignee in the present case, and is contrary to the last decision on the question which was by the Supreme Court of New Jersey. That case is cited and considered at length in the brief of the defendant in error. The New Jersey case presented a shipment of iron, steel, and brass pipe and fittings from California to Newark, New Jersey. The bill of lading described the fittings as iron and steel, and under the sale contract, the shipper's agent prepaid the freight. The goods were delivered to the consignee in New Jersey as upon a prepaid shipment. Eighteen months after the receipt of the goods in New Jersey, an

agent of the Pennsylvania Railroad, in rechecking, found that shipment had contained brass, which bore a higher freight tariff under applicable I. C. C. schedules. The railroad demanded the additional freight charges from the consignee. The consignee refused to pay, and insisted that the railroad should proceed against the shipper, who, under the contract between the shipper and consignee, was liable for the freight charge, and who was solvent and able to pay. In spite of this insistence, the railroad proceeded against the consignee in New Jersey, and a recovery was allowed by the Supreme Court of the State. The opinion recites that the shipper was solvent and in business, and that the carriers had made no attempt to collect from the shipper. *Southern Pac. Co.* v. *Wheaton Brass Works*, 1950, 5 N. J. 594, 76 A. (2d) 890, certiorari denied by the U. S. Supreme Court, 341 U. S. 904, 71 S. Ct. 614, 95 L. Ed. 1343.

Although denial of certiorari imports no expression of the U. S. Supreme Court on the merits of the New Jersey decision *(Alaska Realty Co.* v. *Commissioner of Internal Revenue,* 6 Cir., 141 F. (2d) 675, 153 A. L. R. 901), it is based on other Federal authority and the rule of the Fink case, supra, must be construed to effect a joint and several liability on the shipper and consignee, irrespective of the mistakes of carriers, the contracts, equities, or "shufflings", *Great Northern Ry. Co.* v. *Hyder,* supra, of the parties. In the public interest, charge of the full scheduled rate is mandatory on the carriers, and its full payment, either by the shipper or consignee without priority of either, must be enforced.

The stipulation in this case does not show whether or not efforts have been made to collect from the shipper, but the stipulation does show that the original shipment was "c. o. d.," and if there had been no mistake by the

initial carrier, the consignee would have paid the freight before the delivery of the goods. Therefore, to compel the consignee to pay the freight, compels it to do no more than it was bound to do if it received the goods under the original contract. As between the carriers and the consignee, this decision merely reforms the original contract to correct a mistake made by the initial carrier.

The assignments of error are overruled and the judgment is affirmed.